22 Cal.3d 829 (1978)
587 P.2d 684
150 Cal. Rptr. 888
ASSOCIATED CONSTRUCTION & ENGINEERING COMPANY OF CALIFORNIA et al., Petitioners,
v.
WORKERS' COMPENSATION APPEALS BOARD and JEFFERY L. COLE, Respondents.
Docket No. L.A. 30693.
Supreme Court of California.
December 19, 1978.
*832 COUNSEL
Trout, Heggeness & Sweet, Clifford D. Sweet III and Perry Trout, Jr., for Petitioners.
Hanna, Brophy, MacLean, McAleer & Jensen, Warren L. Hanna, Michael G. Lowe, J.J. Vonk, G.S. Bjornsen, Arthur Hershenson, Louis L. Fayne, Michael J. Brodie, Mansell & Arthur, John L. Maier, Twohy & Brown and Kevin R. Twohy as Amici Curiae on behalf of Petitioners.
Charles L. Swezey, Philip M. Miyamoto, Thomas J. McBirnie, Joel A. Wallock, Ludecke & Andreos and Alan J. Ludecke for Respondents.
Lonergan, Jordan, Gresham, Varner & Savage, Allen B. Gresham, Barry J. Williams, Frank J. Reilly, Robert Goldstein, Robert Cartwright, Edward I. Pollock, Leroy Hersh, David G. Baum, Robert G. Beloud, Ned Good, Arne Werchick, Stephen Zetterberg, Roger H. Hedrick, Leonard Sacks and Robert B. Steinberg as Amici Curiae on behalf of Respondents.
OPINION
MOSK, J.
We must determine whether the principles of comparative negligence prescribed in Li v. Yellow Cab Co. (1975) 13 Cal.3d 804 [119 Cal. Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393], are to be applied to the adjudication of employers' subrogation rights within the workers' compensation system. In particular, we consider whether Witt v. Jackson (1961) 57 Cal.2d 57 [17 Cal. Rptr. 369, 366 P.2d 641], and Roe v. Workmen's Comp. Appeals Bd. (1974) 12 Cal.3d 884 [117 Cal. Rptr. 683, 528 P.2d 771]  which prevent a negligent employer from obtaining any credit toward future workers' compensation liability when an injured employee recovers from a third party  should be modified to allow a partial credit to the employer.
We conclude that the principles of Li should indeed modify the Roe doctrine, but only to allow the concurrently negligent employer a credit against workers' compensation obligations which exceed the proportionate liability he would incur for indemnification of the third party under a comparative system of allocating tort responsibility among multiple *833 wrongdoers. Only this result carries out the central objective of Witt to allocate responsibility equitably between a negligent employer and a third party tortfeasor, and thereby prevent the employer from taking "advantage of his own wrong." (Civ. Code, § 3517.)

I
Under section 3601 of the Labor Code, the recovery of workers' compensation benefits is, except in certain limited circumstances, the exclusive remedy of the injured employee against his employer.[1] The claim of those benefits, however, does not affect the employee's right of recovery "for all damages proximately resulting from such injury or death against any person other than the employer." (§ 3852; see De Cruz v. Reid (1968) 69 Cal.2d 217, 222 [70 Cal. Rptr. 550, 444 P.2d 342].) In the event a third party is liable in whole or in part for the employee's injuries, the Labor Code provides the employer with three basic techniques for obtaining reimbursement from the third party for workers' compensation benefits the employer has paid or become obligated to pay: the employer "may bring an action directly against the third party (§ 3852), join as a party plaintiff or intervene in an action brought by the employee (§ 3853), or allow the employee to prosecute the action himself and subsequently apply for a first lien against the amount of the employee's judgment, less an allowance for litigation expenses and attorney's fees (§ 3856, subd. (b))." (Witt v. Jackson (1961) supra, 57 Cal.2d 57, 69.) The code also allows an employer to receive credit before the Workers' Compensation Appeals Board towards future workers' compensation liability for the amount of an employee's third party judgment "as has not theretofore been applied to the payment of expenses or attorneys' fees, pursuant to the provisions of Sections 3856, 3858, and 3860 of this code. or has not been applied to reimburse the employer." (§ 3861: see also § 3858.)[2]
Prior to 1971, these credit and reimbursement remedies also gave to the employer the advantage of any recovery the employee obtained by way of settlement with the third party. Section 3860, subdivision (b), then provided that "the entire amount of such settlement, with or without suit, is subject to the employer's full claim for reimbursement for compensation he has paid or become obligated to pay...." Section 3861 required the board to allow, as a credit to the employer, amounts from "any *834 recovery by the employee for his injury, either by settlement or after judgment...." (Italics added.)
In Witt we confronted the case of a negligent employer who attempted, at the trial of the employee's third party claim, to avail himself of the statutory reimbursement remedies. We noted that nothing in the Labor Code gave "any indication as to whether or not the employer's right to reimbursement is defeated when the employee's injuries are caused by the concurring negligence of the employer or another of his agents and a third party." (Witt, 57 Cal.2d at p. 69.) We discuss below the underlying rationale of the Witt decision: however, its conclusion may be succinctly related  to allow the negligent employer reimbursement would permit him to profit from his own wrong contrary to the mandate of Civil Code section 3517, and such reimbursement should be denied. We further declared, however, that because "the injured employee may not be allowed double recovery, his damages must be reduced by the amount of workmen's compensation he received." (Id., at p. 73.)
In Roe v. Workmen's Comp. Appeals Bd. (1974) supra, 12 Cal.3d 884, we encountered the negligent employer in a somewhat different setting  claiming a credit under section 3861 after the injured employee had settled his cause of action against the third party without determination of the issue of employer negligence. Two substantial arguments were advanced against extending Witt to bar recovery by a negligent employer in this situation: first, denial of the employer's credit would inure to the benefit of the employee rather than the third party, thereby giving the employee a "double recovery" of both workers' compensation benefits and third party settlement: and second, an adjudication of the employers' negligence by the board would be unconstitutional.[3]
Roe held that neither of these problems justified allowing negligent employers to claim a credit. We expressed doubt as to whether the recovery of workers' compensation benefits by an employee following a settlement constituted a double recovery, given the likelihood that any settlement took into account the possibility of such a recovery (12 Cal.3d at p. 889), and pointed out that in any event "The policy against double recovery primarily protects the third party tortfeasor, not the employer"  the party seeking to assert that policy in Roe. Similarly, we found *835 nothing in the Constitution to prevent the board from determining the employer's fault for the purpose of adjudicating his claim of credit. (Id., at p. 891.) We concluded "(1) that the concurrent negligence of the employer bars his right to a credit against his liability for compensation for the amount of any recovery for his injury obtained by the employee by settlement of his cause of action against third parties; and (2) that where the employer's negligence has not been adjudicated in such third party action, the applicant is entitled to have it adjudicated before the Board." (Gregory v. Workmen's Comp. Appeals Bd. (1974) 12 Cal.3d 899, 902 [117 Cal. Rptr. 694, 528 P.2d 782].)

II
In the course of his employment as a carpenter for Associated Construction & Engineering Company of California (hereinafter employer), Jeffery L. Cole (hereinafter employee) seriously injured his right ankle. At the time, employer was insured with California Compensation and Fire Company.[4] Workers' compensation benefits for temporary disability amounting to $6,144.87 were paid to employee, and he was provided with all necessary medical treatment. Employee brought suit against a third party, Napp Systems, U.S.A., Inc. The record does not reveal the basis of the lawsuit, only that it was settled for $60,000, with the plaintiff-employee actually receiving $40,000. The record also fails to indicate the circumstances surrounding this settlement  in particular, whether employer sought a lien against the settlement in order to recoup his prior workers' compensation expenditures, whether employer joined or intervened in the lawsuit, or if the suit was settled without the employer's consent.
Subsequent to settlement of the third party suit, employee sought a permanent disability award. The workers' compensation judge found that the employee had sustained a permanent disability of 29 percent, representing a total monetary award of $8,085, of which $2,270 had theretofore been advanced by employer.
Employer claimed a credit against its workers' compensation liability under Labor Code section 3861 in the amount of employee's $40,000 net recovery in the third party action, which credit would have effectively eliminated employer's further workers' compensation obligations. Employee pleaded the employer's concurrent negligence as a bar to the *836 credit, relying on Roe. Employer in response maintained that the "all-or-nothing" rule of Roe had been modified by Li, and requested that the judge reduce its credit only in accordance with its comparative fault. The judge, however, concluded that Roe remained applicable, and refused to apply comparative principles or make a determination of employer's relative negligence. He did determine that employer was negligent, and on this basis denied employer's claim of credit. The board affirmed this decision, adopting the opinion of the judge as its own. Faced with an award of permanent disability benefits, undiminished by the employee's substantial third party recovery, employer petitioned this court for a writ of review of the board's decision.

III
In 1971, the Legislature amended two sections of the Labor Code relating to settlements between injured employees and third party defendants. We must determine the effect of the amendments on the credit rights of employers.
The Legislature's action in 1971 followed a decade of judicial activity which had substantially altered the structure of third party litigation in workers' compensation cases. From at least the codification of workers' compensation laws in 1937 until 1971, the consent of both employer and employee was necessary for either to effect a settlement with a third party defendant.[5] This consent requirement encouraged employers and employees to settle simultaneously their claims against the third party. It also served to "protect the rights and interests of employee and employer and to prevent or discourage either of them from obtaining a recovery from the third party at the expense or the disadvantage of the other." (Brown v. Superior Court (1970) 3 Cal.3d 427, 431-432 [90 Cal. Rptr. 737, 476 P.2d 105].) The employer and employee could efficiently be required to share each other's litigational burden in part because each had an interest in establishing the liability of the third party for the employee's injuries and in obtaining the maximum possible recovery. Moreover, there were no dramatic differences in the proof required for either to succeed in his claim.
*837 After Witt a significant element was added to the burden of an employer who sought reimbursement from the third party. The employer now had to litigate the issue of his own negligence in order to succeed  whether he proceeded by way of lien, intervention, or independent action. He retained, however, his statutory right to veto any settlement. As a result, the contributorily negligent employer enjoyed a tactical advantage in settlement negotiations which did not necessarily reflect his likelihood of success at trial.
In Brown, supra, we attempted to reconcile these post-Witt realities of settlement practice with the prevailing statutory policy of protecting the reimbursement rights of the nonnegligent employer in litigation against the third party. We recognized that when "the issues of defendant's negligence and any alleged contributory negligence of the employee have once been determined favorably to the employee  and thus favorably to the employer as well  and only the issue of concurrent negligence of the employer remains in the case," it would impose no hardship on the employer to allow the employee to accept a sum from the third party "in settlement of the employee's share of the total claim free and clear from the reimbursement rights asserted by the employer." (3 Cal.3d at p. 432.) The employer would be left "to pursue the litigation as best he could," but he would be required to litigate no further issues in order to obtain reimbursement than he would otherwise have to litigate in order to claim his lien rights with regard to an employee's settlement recovery  i.e., the issue of his negligence. At the same time, by allowing independent employee-third party settlements once the common issues had been "determined or conceded against the third party," Brown removed the tactical advantage previously enjoyed by a negligent employer. (Id.) The employee could reach an independent settlement with a third party willing to agree on liability and the employee's recovery, but unwilling to compensate the negligent employer; the employer, if he sought reimbursement, would be required to litigate the issue of his negligence in an action against the third party.
The year following Brown the consent provision of the Labor Code was amended. The following subdivision was added to section 3859: "(b) Notwithstanding anything to the contrary contained in this chapter, an employee may settle and release any claim he may have against a third party without the consent of the employer. Such settlement or release shall be subject to the employer's right to proceed to recover compensation he has paid in accordance with section 3852." In addition, section 3860, subdivision (b), which subjects the employee's settlement to the *838 "employer's full claim for reimbursement," was prefaced with the qualifying phrase "except as provided in Section 3859."[6]
These amendments clearly deny the employer his former right to veto any settlement between the employee and third party; however, the breadth and imprecision of the amendatory language has generated some uncertainty as to an employer's remedies following such an independent settlement. Much of the controversy centers on the effect of the amendments on the employer's lien and the rule of Brown. (See Van Nuis v. Los Angeles Soap Co. (1973) 36 Cal. App.3d 222 [111 Cal. Rptr. 398]; but see Marrujo v. Hunt (1977) 71 Cal. App.3d 972 [138 Cal. Rptr. 220]; Harvey v. Boysen (1975) 50 Cal. App.3d 756, 760 [123 Cal. Rptr. 740]; Lasky, Subrogation Under the California Workmen's Compensation Laws  Rules, Remedies and Side Effects (1972) 12 Santa Clara Law. 1, 8-27; Cal. Workmen's Compensation Practice (Cont.Ed.Bar 1973) p. 648; id., (Cont.Ed.Bar Supp. 1976) pp. 149-150.) (1) We restrict our discussion to the issue presented herein  the effect of the amendments on the employer's credit rights  and conclude that neither the language nor the purpose of the 1971 amendments reflect a legislative intent to abolish the employer's credit with respect to an independent employee-third party settlement.
It is significant that the Legislature modified the lien provisions of sections 3859 and 3860, but did not change the language of either section 3858 or section 3861, which together authorize the employer's credit remedy. This omission raises at least an inference that the Legislature did not have the employer's credit in mind when it amended section 3859. (See People v. Valentine (1946) 28 Cal.2d 121, 142 [169 P.2d 1].)
The Legislature's ambiguous expressions of intent in section 3859, subdivision (b), do not justify an abridgement of the policy, expressed forcefully elsewhere in the statute, that a nonnegligent employer should have the advantage of an employee's settlement with a third party so long as he can prove his liability for future workers' compensation payments and defeat an assertion of his culpability. Section 3861 still provides that "The appeals board is empowered to and shall allow, as a credit to the employer to be applied against his liability for compensation, such *839 amount of any recovery by the employee for his injury, either by settlement or after judgment, as has not theretofore been applied to the payment of expenses or attorneys' fees, pursuant to the provisions of Sections 3856, 3858, and 3860 of this code, or has not been applied to reimburse the employer." (Italics added.) Yet, unless the Brown prerequisites happen to be met, denial of an employer's credit would restrict him to a cause of action against the third party in which he would be compelled to litigate the issue of the defendant's liability as well as his own lack of negligence.[7]
Finally, even were we, in the manner of Brown, to condition the abolition of an employer's credit on the determination of the common issue against the third party, denial of the credit would in practice substantially deprive many nonnegligent employers of the possibility of recouping a substantial portion of their workers' compensation benefits. In a series of Court of Appeal decisions, it has been held that the employer, in an independent action against the third party, cannot recover for workers' compensation benefits not yet determined by the board. (Conner v. Utah Constr. & Mining Co. (1964) 231 Cal. App.2d 263, 275 [41 Cal. Rptr. 728]; Castro v. Fowler Equipment Co. (1965) 233 Cal. App.2d 416, 421-423 [43 Cal. Rptr. 589]; Slayton v. Wright (1969) 271 Cal. App.2d 219, 229-232 [76 Cal. Rptr. 494]; but see Comment, Roe v. Workman's Compensation Appeals Board: Something Fishy in California Workers' Compensation Law (1976) 27 Hastings L.J. 637, 643-646.) Thus, in order fully to recover his workers' compensation obligations, the employer would be required to postpone adjudication of his third party claim until permanent benefits were fixed by the board. Yet obvious legal and practical considerations might prevent the employer from so delaying trial of his claim. Section 3853 requires that employer and employee actions be consolidated, and nothing in the statute prevents an employee from postponing his independent settlement under section 3859 until the eve of trial, or even the middle of trial. We should not easily attribute to the Legislature an intent to make an employer's recovery fluctuate dramatically with his ability to prolong litigation.
*840 In short, abolition of the employer's right to claim a credit on the basis of an independent employee-third party settlement would effectively deny nonnegligent employers the ability to recoup a substantial portion of the workers' compensation payments which would otherwise be received, indirectly, from third parties by way of a settlement credit. Nothing in the statute indicates an intent to abridge in this manner the policy expressed in section 3861. We therefore conclude that the Legislature did not intend to insulate from employers' credit claims independent settlements negotiated between employees and third parties. Accordingly, we consider the appropriate principles to apply to the adjudication of such claims.

IV
In Li v. Yellow Cab Co. (1975) supra, 13 Cal.3d 804, 828-829, we held that "the `all-or-nothing' rule of contributory negligence ... should be and is herewith superseded by a system of `pure' comparative negligence, the fundamental purpose of which shall be to assign responsibility and liability for damage in direct proportion to the amount of negligence of each of the parties." We also noted, however, that our decision in Li should "be viewed as a first step in what we deem to be a proper and just direction, not as a compendium containing the answers to all questions that may be expected to arise." (Id., at p. 826.) This caveat mandates that we proceed with caution when considering the application of comparative negligence principles to a system of workers' compensation which has as its central feature a principle of employer liability without fault. Nevertheless, to the extent Witt and Roe depend on the vitality of contributory negligence, the same considerations of "logic, practical experience, and fundamental justice" that motivated our decision in Li (id., at p. 808) require an accommodation of the Witt-Roe doctrines to a comparative system.
(2a) The employer herein contends that the "all-or-nothing" rule of Roe must fall to the logic of Li, and urges that we replace Roe with a system in which the board determines the employer's comparative negligence, and denies only that percentage of employer's credit which corresponds to his degree of negligence.[8] Both employee and the board argue that modification of Witt and Roe in light of Li would violate the *841 purposes of all three cases, and unnecessarily  even unconstitutionally  inject questions of fault into proceedings before the board.
Analysis of the underlying theory of Witt reveals that application of comparative negligence principles to that case would not violate its purpose, or the intent of Li; but such analysis also points up serious difficulties with the particular application of Li urged by employer.
The central animus of our decision in Witt was to obtain an equitable distribution of liability between the negligent employer and the third party tortfeasor. (See Larson, Law of Workmen's Compensation (1976) § 75.22, p. 14-267; Comment, Roe v. Workman's Compensation Appeals Board: Something Fishy in California Workers' Compensation Law (1976) 27 Hastings L.J. 637, 640.) Under the rule of Witt, the negligent employer pays workers' compensation benefits to the employee and is denied reimbursement; the third party obtains a reduction in his tort liability which corresponds to those benefits; and the employee's net recovery remains unchanged. The effect of Witt is thus to allow the third party defendant to "shift part of the responsibility for the judgment rendered against it to the employer's carrier." (Witt, supra, 57 Cal.2d at p. 70.)
The most significant aspect of Witt, for purposes of analyzing the applicability of comparative negligence principles to the credit and reimbursement rights of employers, is its reference to the then-existing law of contribution between joint tortfeasors. Prior to our decision in that case an employer could be reimbursed out of a third party recovery whether or not he was negligent. We pointed out in Witt that this rule corresponded to the pre-1957 common law doctrine denying contribution between concurrent tortfeasors, in that the third party paid in full the employee's damages without any contribution from the negligent employer. (Id.) We held, however, that passage in 1957 of Code of Civil Procedure sections 875 through 880 mandated judicial provision for some contribution by the negligent employer, noting that "today, in the absence of the Workmen's Compensation Act, a negligent third party would be allowed contribution against a concurrently negligent employer...." (Id.) An approximation of that contribution, within the statutorily limited liability of the employer, was effected by denying the contributorily negligent employer reimbursement and granting the third party a corresponding reduction in his tort liability.
Witt thus established the principle that, to the extent allowed by the employer's statutory liability, the employer and third party should share liability as would ordinary concurrent tortfeasors. To the extent the *842 reimbursement provisions of the Labor Code allowed an employer to avoid this duty of contribution, we reasoned, they allowed him to "profit from his own wrong." We applied the same logic in Roe with respect to the credit provisions of the Labor Code.
The development and application of comparative negligence principles, however, has undermined the conceptual basis for the rule of Witt and Roe by altering the liability of ordinary joint tortfeasors. To achieve Li's objective of a "system under which liability for damage will be borne ... in direct proportion to ... respective fault" (Li, 13 Cal.3d at p. 813), in American Motorcycle Assn. v. Superior Court (1978) 20 Cal.3d 578, 591-599 [146 Cal. Rptr. 182, 578 P.2d 899], we modified California's common law equitable indemnity doctrine to permit "comparative indemnity" between multiple tortfeasors. As Witt and Roe interpreted the reimbursement and credit provisions of the Labor Code in light of the advent of contribution, so we must now interpret them to reflect the advent of comparative responsibility among joint tortfeasors. Applying the principle that the employer and third party should, to the extent consistent with the employer's statutory immunity from tort liability, share the burden of the employee's recovery as joint tortfeasors, we conclude that the concurrently negligent employer should receive either credit or reimbursement for the amount by which his compensation liability exceeds his proportional share of the injured employee's recovery. (See Arbaugh v. Procter & Gamble Mfg. Co. (1978) 80 Cal. App.3d 500, 508-509 [145 Cal. Rptr. 608].)
(3) When the issue of an employer's concurrent negligence arises in a judicial forum, application of comparative negligence principles is relatively straightforward. The third party tortfeasor should be allowed to plead the employer's negligence as a partial defense, in the manner of Witt. Once this issue is injected into the trial, the trier of fact should determine the employer's degree of fault according to the principles of American Motorcycle. The court should then deduct the employer's percentage share of the employee's total recovery from the third party's liability  up to the amount of the workers' compensation benefits assessed against the employer.[9] (4) Correspondingly, the employer should be denied any claim of reimbursement  or any lien under section 3856, subdivision (b)  to the extent that his contribution would then fall short of his percentage share of responsibility for the employee's total recovery.
*843 (2b), (5) When the issue of an employer's concurrent negligence arises in the context of his credit claim based on a third party settlement, the board must determine the appropriate contribution of the employer since the employee's recovery does not represent a judicial determination of tort damages. Specifically, the board must determine (1) the degree of fault of the employer, and (2) the total damages to which the employee is entitled. The board must then deny the employer credit until the ratio of his contribution to the employee's damages corresponds to his proportional share of fault. Once the employer's workers' compensation contribution reaches this level, he should be granted a credit for the full amount available under section 3861. Only when such level of contribution has been reached, however, will grant of the statutory credit adequately accommodate the principle that a negligent employer should not profit from his own wrong.[10]
A system so structured will effect an allocation of responsibility between negligent employers and third party tortfeasors far more equitably than the rule urged by employer. Employer proposes that the board determine the employer's relative fault and reduce the amount of its credit by the percentage of negligence so determined. The employer could then take this reduced credit immediately, without regard to the magnitude of its prior contribution to the employee's recovery. Under this mechanistic application of Li, a negligent employer that had made an insignificant contribution would have its already deficient contribution *844 further reduced  a result clearly at odds with the premise that an employer should not be able to profit from its own wrong.[11]
(6) In opposition to the application of comparative negligence principles to employers' subrogation rights within the workers' compensation system, it is argued that the board cannot constitutionally be authorized to make the necessary factual determinations. In Roe, we rejected the contention that an inquiry by the board into whether the employer was negligent injects "fault" into the board's compensatory function, contrary to the constitutional requirement that the workers' compensation system compensate workers "irrespective of the fault of any party." (See Cal. Const., art. XIV, § 4.) We reasoned: "To classify the employee's damage recovery as a workmen's compensation benefit at the outset of the hearings begs a question yet to be determined. At that point the employee stands before the board with an achieved recovery of damages. If the employer has been negligent, the recovery is unalloyed tort damages; none of it belongs to the employer, none of it is available to offset the employer's compensation liability. If the employer is freed of fault, he is entitled to the offset; to that extent the employee's recovery is the equivalent of workmen's compensation benefits (received from the third party in lieu of the latter's liability to the fault-free employer)." (Roe, 12 Cal.3d at p. 891.)
The theory thus advanced in Roe concerning the board's determination of whether the employer was negligent is equally applicable to determination of the degree the employer was negligent: in either case, the board does not condition benefits upon "the fault of any party," but rather seeks only to characterize the employee's prior recovery from the third party. As we explained in Roe, the Constitution does not prevent adjudications of fault to resolve such ancillary issues as credit as long as workers' compensation benefits are not thereby diminished; and under the rule announced herein such benefits are not diminished whether or not the employer's negligence is determined. The rule has been structured in such a manner that the employee fully recovers his tort damages  but from the proper parties. Apportionment of liability between the concurrently negligent employer and third party may depend on the relative *845 fault of the two, but workers' compensation benefits are not so dependent. Compensation thus remains irrespective of fault.
(7) It is further argued that application of comparative negligence principles in the context presented by the case at bar  i.e., when the employer claims credit on the basis of a settlement and no determination has been made of either the employer's degree of negligence or the employee's total damages  will require the board to make difficult factual determinations and will thus contravene the constitutional purpose underlying the workers' compensation system of accomplishing "substantial justice in all cases expeditiously, inexpensively, and without incumbrance of any character...." (Cal. Const., art. XIV, § 4.) We disposed of such a contention in Roe, holding that board determination of such tangential issues as negligence would not encumber board proceedings unnecessarily. We noted that "Sections 4551 and 4553 require the board to alter the amount of the award when either employee or employer has been guilty of serious and wilful misconduct," and concluded that "The board may decide a claim of employer negligence with no more and probably less difficulty than the issue of serious and wilful misconduct." (Roe, 12 Cal.3d at p. 892.)
It is forcefully argued on behalf of the board, however, that applying comparative principles to the rule of Roe will require a set of determinations qualitatively more complicated than merely inquiring into the presence or absence of employer negligence. Although the application of comparative principles to employers' credit rights may indeed burden board proceedings to some extent by requiring more extensive evidentiary presentations, we do not agree that the problems posed thereby are so severe or so impervious to amelioration as to render the methodology either unconstitutional or misguided.
The rule announced herein contemplates two factual determinations: (1) the degree of fault attributable to the employer, and (2) the total damages suffered by the employee. When a settlement between the employee and a third party tortfeasor fails to resolve these issues, the task devolves upon the board. The burden thus imposed, however, may often be discharged without being appreciably more difficult than under the current requirements of Roe. For instance, the employer, as the party asserting a claim of credit after a determination of workers' compensation liability, must defeat any claim that its percentage share of total damages equals or exceeds its workers' compensation liability. Because the board need only decide to deny credit that the damages for which the employer *846 is responsible equal the employer's actual workers' compensation contribution, a precise determination of damages will not always be necessary. Elaborate evidentiary presentations may be avoided when the benefits assessed against the employer are clearly insufficient to merit a credit.
Thus, in the large number of cases involving a single third party tortfeasor and a tort recovery by the employee substantially in excess of his workers' compensation entitlement, board proceedings will not be unduly complicated. Even in the few cases in which the assessment of total damages poses special difficulties or the existence of multiple tortfeasors renders an assessment of the employer's degree of negligence relatively burdensome, we do not perceive the obstacles posed to be insurmountable.
The other policy arguments asserted against extending comparative principles to the adjudication of employers' credit rights are similarly unpersuasive. It is contended that such an extension would permit a negligent employer to profit from its own wrong and thus violate the important policy effectuated through the Witt-Roe doctrine. Under the rule we announce, however, the employer does not so profit; no credit is available until the employer has fully satisfied its share of tort damages. Allowing the concurrently negligent employer a credit limited in this fashion is rational if nonnegligent employers are to be permitted credit; each profits, if at all, only to the extent it committed no wrong. The resultant system effects a fair and equitable balance between the interest of the employee in receiving his full damages and the interest of the employer in recovering its subrogation interest. The employer does not profit from its wrong, nor does the employee enjoy a double recovery.
Finally, permitting a partial credit will not encourage employers to maintain "half-safe" workplaces, in violation of the overriding purpose of workers' compensation law. (See Cal. Const., art. XIV, § 4.) An employer will obtain a reduction of its workers' compensation liability only if its degree of negligence is so small that its statutory liability exceeds its percentage share of the tort measure of damages. In any event, there is no safety disincentive in a system that holds the employer responsible for its full share of tort damages before any credit against workers' compensation benefits is allowed.

V
(2c) We conclude that the doctrines of Roe and Witt must be modified to reflect the principles of comparative negligence developed in *847 Li and American Motorcycle. Thus, an employer may be allowed credit or reimbursement under the Labor Code, based on an employee's recovery from a third party, but only to the extent the employer's liability in workers' compensation exceeds its share of responsibility for the employee's full tort damages.[12] When an employer claims a credit before the board after an employee's independent third party settlement, section 3861 operates as a delegation of authority to the board to make the necessary determinations to apply this rule. Any complication of board proceedings that may unavoidably result is justified by the same considerations of logic and justice that led us to apply comparative negligence in the first instance.
The award is annulled and the matter remanded to the Workers' Compensation Appeals Board for further proceedings consistent with this opinion.
Clark, J., Richardson, J., and Manuel, J., concurred.
CLARK, J.
Li v. Yellow Cab Co. (1975) 13 Cal.3d 804 [119 Cal. Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393], American Motorcycle Assn. v. Superior Court (1978) 20 Cal.3d 578 [146 Cal. Rptr. 182, 578 P.2d 899], Daly v. General Motors Corp. (1978) 20 Cal.3d 725 [144 Cal. Rptr. 380, 575 P.2d 1162], and Safeway Stores, Inc. v. Nest-Kart (1978) 21 Cal.3d 322 [146 Cal. Rptr. 550, 579 P.2d 441], compel concurrence in the judgment and in the majority opinion.
However, as we become more familiar with the practical workings of the comparative fault system, justices will recognize, as many trial judges have, that the system involves great expense and that inquiry into relative fault requires determinations our triers of fact  whether juries, judges, or administrative boards  are ill-equipped to make. It is encouraging to see some of my colleagues now recognize the shortcomings of the system. (Infra, p. 861.) Hopefully, a majority of our court  if not our Legislature  will soon adopt a simpler system of apportioning damage in cases where more than one party is at fault.
JEFFERSON, J.[*]
I dissent.
I am unable to agree with the majority's holding that the Workers' *848 Compensation Appeals Board (hereinafter the Board) is required to apply the principles of comparative negligence, developed in Li v. Yellow Cab Co. (1975) 13 Cal.3d 804 [119 Cal. Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393], when an employer claims a credit after an employee has made an independent settlement with a third party and then seeks before the Board disability compensation benefits from the employer. The majority interprets Labor Code section 3861 as a delegation of authority to the Board to make the necessary determinations to apply the rule established by the majority  that an employer shall be allowed a credit under the Labor Code against his liability for disability compensation in the amount of an employee's recovery from a third party, but only to the extent the employer's liability for worker's compensation exceeds his share of responsibility for the employee's full tort damages. This rule, according to the majority, requires the Board to determine first, whether the employer was negligent, and, if so, then to determine (1) the degree of fault of the employer, (2) the total damages to which the employee is entitled, and then to deny the employer credit until the ratio of his contribution to the employee's damages corresponds to his proportional share of fault. But once the employer's workers' compensation contribution reaches this level, the employer must then be granted a credit for his further workers' compensation liability in the full amount of the employee's third-party recovery available under Labor Code section 3861.

I

The Effect of the 1971 Amendments to Labor Code Sections 3859 and 3860 Upon an Employer's Credit Rights in a Proceeding Before the Workers' Compensation Appeals Board
The majority considers first whether the 1971 amendments to Labor Code sections 3859 and 3860 had any effect on an employer's credit rights under Labor Code sections 3858 and 3861  the two sections which provide for an employer's credit remedy before the Board when the injured employee seeks permanent disability compensation after having effectuated a tort recovery against a third party tortfeasor by way of settlement or judgment. It is conceded that the Legislature modified the provisions of Labor Code sections 3859 and 3860 but did not make any changes in the provisions of Labor Code sections 3858 and 3861.
*849 The 1971 amendment to Labor Code section 3859 added a subdivision which reads as follows: "(b) Notwithstanding anything to the contrary contained in this chapter, an employee may settle and release any claim he may have against a third party without the consent of the employer. Such settlement or release shall be subject to the employer's right to proceed to recover compensation he has paid in accordance with Section 3852." (Italics added.) Labor Code section 3860, subdivision (b), was amended to read: "(b) Except as provided in Section 3859, the entire amount of such settlement, with or without suit, is subject to the employer's full claim for reimbursement for compensation he has paid or become obligated to pay and any special damages to which he may be entitled under Section 3852, together with expenses and attorney fees, if any, subject to the limitations in this section set forth." (Italics added.)
The majority reasons that the fact that no legislative changes were made in either section 3858 or section 3861 of the Labor Code creates an inference that the Legislature did not have the employer's credit in mind when it amended Labor Code section 3859. The majority considers that the language of Labor Code section 3859, subdivision (b), constitutes an ambiguous expression of legislative intent and concludes that the amendments to Labor Code sections 3859 and 3860 cannot be construed as expressing a legislative intent that an employer should be barred from obtaining, in a Board proceeding pursuant to Labor Code section 3861, a credit against his liability to the injured employee for permanent disability payments in the amount of the injured employee's recovery obtained by way of settlement from a third party tortfeasor.
I disagree with this conclusion of the majority. I see nothing ambiguous about the Legislature's intent in amending Labor Code sections 3859 and 3860 but not amending Labor Code sections 3858 and 3861. I think the Legislature did have in mind the employer's credit when it amended Labor Code section 3859. In my view, the 1971 amendments to Labor Code sections 3859 and 3860 should be interpreted as precluding any allowance, as a credit to the employer to be applied against his liability for disability compensation, of the amount of an injured employee's recovery from a third party tortfeasor, obtained by way of an independent settlement as contrasted with recovery by way of judgment against the third party tortfeasor.
It is to be noted that Labor Code section 3860, subdivision (b), makes the amount of the employee's third party settlement subject to the employer's claim for reimbursement for compensation the employer has *850 paid or "become obligated to pay," but such right of reimbursement is made subject to Labor Code section 3859 by virtue of the beginning phrase of subdivision (b) of section 3860 which reads as follows: "Except as provided in Section 3859." Thus, even though section 3860, subdivision (b), makes the employee's settlement subject to reimbursement for compensation which the employer has "become obligated to pay" as well as for compensation which he "has paid," these provisions are made subject to section 3859, subdivision (b), the provisions of which make the employee's third party settlement amount subject to one remedy by the employer and one remedy only  "to recover compensation he has paid in accordance with Section 3852." (Italics added.) This limitation of remedy for the employer is made by Labor Code section 3859, subdivision (b), although Labor Code section 3852 authorizes an action against the third party by "[a]ny employer who pays, or becomes obligated to pay compensation." (Italics added.)
I construe section 3859, subdivision (b), as clearly and unequivocally limiting an employer's subrogation remedy in the event of an employee's recovery from the third party  by way of settlement rather than by way of a judgment  to an action against the third party for the amount of compensation already paid by the employer. In the case of a recovery by an injured employee against a third party tortfeasor by way of a settlement rather than a judgment, Labor Code section 3859, subdivision (b), by its express and unambiguous terms, has wiped out any remedy by the employer to secure a credit, to be applied to the employee's third party settlement recovery, in a subsequent proceeding before the Board in which the employee seeks to obtain from the employer permanent disability compensation and additional medical liability.
Although Labor Code section 3860 speaks in terms of compensation which an employer has become obligated to pay, the shifting to the third party tortfeasor of this liability was simply not provided for by Labor Code section 3859, subdivision (b). In similar fashion, Labor Code section 3861 speaks in terms of the employer obtaining before the Board a credit "to be applied against his liability for compensation." (Italics added.) In amending section 3859, subdivision (b), the Legislature's failure to use language to provide that an employee's recovery from a third party by way of settlement shall be subject to the employer's right to proceed before the Board to obtain a credit in the amount of this settlement recovery to be applied against his liability to the employee for compensation, indicates in a fairly decisive way that the provisions of Labor Code section 3861 were intended to be affected by the limiting language specifically used in Labor Code section 3859, subdivision (b).
*851 In addition, it is significant that Labor Code section 3858 provides that, after payment of the employer's lien in the third party suit, the employer is relieved from the obligation to pay further compensation to the employee (by way of credit) "up to the entire amount of the balance of the judgment, if satisfied, without any deduction." (Italics added.) Labor Code section 3858 contains no provision for an employer's relief from further compensation liability to an injured employee where the employee has effectuated a settlement with the third party instead of proceeding to obtain a judgment. It is equally significant that Labor Code section 3861 provides that, in a Board proceeding, the employer is entitled to credit against the employer's liability for compensation in the amount of the employee's recovery from a third party by way of "settlement or after judgment." (Italics added.)
Since, in 1971, Labor Code section 3858 did not provide for an employer's right to credit against his liability for compensation, in the amount of the employee's third party recovery by way of settlement, but only a right to credit in the amount of the employee's third party recovery by way of judgment, the failure of the Legislature to refer to section 3858 in amending section 3859 is of no moment on the question of legislative intent. But the failure of the 1971 amendment of section 3859 to refer to the credit provisions of section 3861, insofar as the employee's third party recovery by way of settlement as distinct from recovery by way of judgment is concerned, fortifies the conclusion that, after the 1971 amendment to Labor Code section 3859, Labor Code section 3861 no longer provided an employer with the right of a credit against his liability for compensation in the amount of the employee's third party recovery by way of settlement rather than by way of judgment.
It is my view, therefore, that the 1971 amendments to Labor Code sections 3859 and 3860 can logically and rationally be interpreted in only one way. These amendments permit an injured employee and a third party, alleged to be responsible for the injury, without the consent of the employer, to enter into a settlement after an action has been filed against the third party, with the intentional result that the employer must obtain reimbursement or credit, if at all, solely from the third party in an action against such third party pursuant to the provisions of Labor Code section 3852. The employee's recovery from a third party by way of settlement, rather than by way of judgment, is intended to be free from any claim of reimbursement or credit by the employer irrespective of whether the employer was negligent or not. Whether this difference between the legislative treatment of an employee's recovery from a third party by way *852 of settlement and an employee's recovery from a third party by way of judgment is logically or rationally sound is not for this court to decide.
Furthermore, it is certainly not for this court to rectify what it deems to be omissions of sound public policy provisions from legislative enactments. This principle was stated many years ago in Dodds v. Stellar (1947) 30 Cal.2d 496, 506 [183 P.2d 658], in the following cogent language: "These several statutory provisions clearly define the rights of the parties and completely cover the field. They emphasize the separate and distinct interest of the employer or its insurance carrier in the avails of the damage recovery for its full protection and leave no room for the evaluation of the rights of the parties in a manner inconsistent with the legislative plan. If there is to be any change in these statutory provisions defining the rights of the parties, the suggestion for such change should be addressed to the Legislature rather than to the courts." (Italics added.)

II

The Application of Comparative Negligence Principles to a Proceeding Before the Workers' Compensation Appeals Board in Which an Employer Claims a Credit Against His Liability for Compensation in the Amount of an Injured Employee's Settlement Recovery From a Third Party Injects the Concept of Fault in Violation of Article XIV, Section 4 of the California Constitution
The majority's holding modifies the rule of law established in Roe v. Workmen's Comp. Appeals Bd. (1974) 12 Cal.3d 884 [117 Cal. Rptr. 683, 528 P.2d 771]. By way of dicta, the majority also announces a modification of the rule of law established by Witt v. Jackson (1961) 57 Cal.2d 57 [17 Cal. Rptr. 369, 366 P.2d 641]. The Roe case deals with an employer's credit rights when an injured employee has obtained a recovery for his injury against a third party. The Witt case deals with an employer's reimbursement rights when an injured employee has obtained a recovery for his injury against a third party. The difference between the two situations makes a substantial difference in any justification for modifying the principles of law involved in the two cases. Thus, an employer's right to credit is distinguished from his right to reimbursement by reference to both the time and the forum in which the employer seeks to shift his liability for workers' compensation to the employee's recovery against the third party tortfeasor.
*853 When the employer seeks reimbursement out of the proceeds recovered by the employee from the third party, it is to recoup money payments which the employer has previously paid to the injured employee in workers' compensation benefits. On the other hand, when the employer seeks a credit, he is seeking an allowance against his future liability for compensation benefits to the injured employee in the event the employee secures a tort recovery from a third party and subsequently applies to the Board for further workers' compensation benefits. In this latter situation, the employer seeks to get relieved of the obligation to pay further benefits to the employee up to the entire amount of the employee's third party recovery. The employer is credited with this amount as if he had in fact paid it himself. The forum for the adjudication of the credit issue is the Board whereas the forum for the adjudication of the reimbursement issue is the civil courts.
In the Roe case, this court held that where an injured employee has secured a recovery for his injury from a third party, any concurrent negligence of the employer bars his right to a credit under Labor Code section 3861 against his workers' compensation liability in a Board proceeding, and that if the employer's negligence has not been adjudicated in the third party action, the employee is entitled to have it adjudicated before the Board. (See Gregory v. Workmen's Comp. Appeals Bd. (1974) 12 Cal.3d 899 [117 Cal. Rptr. 694, 528 P.2d 782].)
It is my view that the rule of law announced in Roe should not be modified to require the Board to allow a negligent employer some credit against his liability for further workers' compensation benefits for the amount of the recovery by the employee of tort damages against a third party. Although I would interpret Labor Code section 3861 as not authorizing a credit to the employer at all against his liability for permanent disability benefits when the injured employee has made a third party settlement recovery because of the 1971 amendments to Labor Code sections 3859 and 3860. I certainly can see no justification for changing the rule of Roe which precludes any credit to a negligent employer, regardless of the comparative degree of his negligence or fault, because of the decisions in Li and in American Motorcycle Assn. v. Superior Court (1978) 20 Cal.3d 578 [146 Cal. Rptr. 182, 578 P.2d 899]. There has been no legislative change in Labor Code section 3861 since the decision in Roe in 1974 to justify a judicial change in interpretation based on legislative action. Nor has there been, since the Roe decision in 1974, any legislative changes in other sections of the Labor Code such as *854 sections 3858, 3859 and 3860 to justify a finding of any different legislative intent with respect to section 3861.
The Witt court held that the Labor Code provisions which provided reimbursement remedies to employers were to be construed to prohibit access to such remedies by negligent employers. The court stated: "In the absence of express terms to the contrary, these provisions must be deemed to be qualified by Civil Code section 3517 which provides that `No one can take advantage of his own wrong.'" (Witt, supra, 57 Cal.2d 57, 72.)
In reaching its result, the Roe court followed the same process of reasoning used by the Witt court. Thus, the Roe court points out that Labor Code sections 3852, 3854, 3856 and 3860, subdivision (b), if read literally, permit an employer to recoup his compensation payments from the negligent third party; that it is the substantive law that rejects his recoupment if he has been concurrently negligent. In similar fashion, Roe holds that Labor Code section 3861, which is the procedural rule for permitting employers to claim a credit against future compensation liability in the amount of an employee's recovery from a third party, is subject to the application of the substantive law declared by Witt with the result that a negligent employer may not obtain such a credit in spite of the clear language of Labor Code section 3861.
Under Roe, therefore, an injured employee, as an applicant before the Board for permanent compensation benefits, is permitted to raise the Witt v. Jackson defense of the employer's negligence. Upon a finding that the employer was negligent, the employer may not obtain a credit against his liability for permanent disability benefits sought by the injured employee. The damages recovered by the employee for his injuries by way of a settlement from a third party may not be looked to for credit by a negligent employer.
In analyzing the legal principles set forth in Witt and Roe for purposes of determining whether they are appropriate for application of comparative negligence or comparative fault rules of law, we cannot overlook the fact that the legal principles decided by Witt deal with the reimbursement rights of a negligent employer and are applied in court proceedings while the Roe doctrine that a negligent employer, regardless of his relative degree of negligence, is not entitled to credit comes into play only in an administrative proceeding before the Board. Today's majority decision determines, albeit by dicta, that the Witt rule of law is *855 to be modified because of Li and American Motorcycle so that the negligent employer is no longer to be denied any reimbursement from the proceeds of the employee's recovery against the third party but is to receive partial reimbursement in the amount by which his compensation liability exceeds his proportional share of the injured employee's recovery based on comparative negligence principles.
As I have indicated previously, the question of whether Witt should be modified by the injection of comparative negligence or comparative fault principles involves different considerations than those involved in the question actually before this court in the case at bench of whether Roe should be so modified. The fact that the Witt reimbursement question is decided in the injured employee's court action against the third party and the Roe credit question is decided in a workers' compensation proceeding before the Board is indicative of the different considerations that underlie a determination of the questions presented. Because of this difference, and the fact that the Witt reimbursement question is not presented by the factual situation before us, I shall focus my attention on the majority's holding with respect to the modification of Roe in a workers' compensation proceeding before the Board.
The majority seeks to justify its holding on a theory that the same considerations of "logic, practical experience, and fundamental justice" that constituted the basis for Li (Li, supra, 13 Cal.3d 804, 808) requires a modification of the Roe principle to accommodate a comparative negligence system. I find this asserted justification unpersuasive and untenable. In my view, the majority's modification of Roe, by inserting principles of comparative negligence into the workers' compensation system, is substantially, if not totally, lacking in logic, practical experience, or fundamental justice  the same principles which motivated the Li court to adopt a system of comparative negligence for tort cases administered by courts.
In reaching its decision, the majority purports to apply a caveat of Li which mandates that this court proceed with caution when considering the application of comparative negligence principles to a system of workers' compensation law which emphasizes the principles of employer liability without fault. But, on the contrary, the majority decision indicates that the majority has completely disregarded the caveat of Li, has thrown caution to the winds, and has proceeded boldly, recklessly and without caution to apply comparative negligence principles to the workers' compensation system in complete disregard of one element of *856 the heart of this system, mandated by the California Constitution, that the compensation for workers who sustain injury in the course of their employment, must be predicated on employers' liability "irrespective of the fault of any party." (Cal. Const., Art. XIV, § 4.)
The majority rejects the arguments advanced by the injured employee and the Board in the case at bench that a modification of the legal principle established by Roe to make applicable comparative negligence principles set forth in Li would unjustifiably violate the purposes of both cases and, by requiring the Board to apply Li principles in a proceeding in which the injured employee seeks permanent disability benefits and the employer seeks a credit because of the employee's tort recovery of damages from a third party by way of settlement, would violate the provisions of article XIV, section 4 of the California Constitution, as set forth above. I find these arguments tenable and persuasive, and, contrary to the views of the majority, supported significantly by principles of "logic, practical experience, and fundamental justice." (Li, supra 13 Cal.3d 804, 808.) In my view the majority's holding in modifying Roe to permit a negligent employer to obtain a partial credit before the Board against his liability for permanent disability benefits by reason of the injured employee's recovery from a third party by way of settlement constitutes a clear case of violation of the provisions of section 4 of article XIV of the California Constitution, which I have set forth above.
I have previously pointed out that, in holding that the reimbursement remedies provided by the Labor Code for employers are not available to negligent employers, the Witt court placed the result on the ground that the Labor Code sections providing for such reimbursement remedies are to be deemed qualified by Civil Code section 3517 which provides that "[n]o one can take advantage of his own wrong." Does it not follow that, in precluding a negligent employer from obtaining a credit under Labor Code section 3861 by applying the Witt rationale, the same justification is applicable in Roe to preclude a negligent employer from profiting from his own wrong? If this is the logical basis for Roe, then the adoption of a rule of partial credit under comparative negligence principles rather than denying any credit at all constitutes a repudiation of this rationale. Even though it operates to a limited degree, the majority's holding unquestionably permits a negligent employer to profit from his own wrong, while the Roe court refused to permit a negligent employer to profit at all from his own wrong. Since the Witt and Roe rules are justified by the no-profit-from-one's-own-wrong principle set forth in Civil Code section 3517, the rule advanced by the majority today constitutes, without *857 adequate justification, a renunciation and repudiation of that same principle. In my view, Civil Code section 3517 proscribes the majority's approach in the case at bench for the same compelling reason that that section sustained the holdings in Witt and Roe  to prevent a negligent employer, irrespective of the degree of his negligence, from taking advantage of his own wrong  whether by way of a total reimbursement or total credit or by way of a partial reimbursement of a partial credit.
The majority rejects the contentions of the injured employee and the Board that the application of comparative principles of negligence to "credit" proceedings before the Board under Labor Code section 3861 injects the concept of "fault" into the Board's compensatory function contrary to the constitutional requirement that workers be compensated "irrespective of the fault of any party." (See Cal. Const., art. XIV, § 4.) The answer of the majority to this contention is simply that the Roe court rejected the same contention in holding that the Board could make a determination of whether an employer had been negligent when credit was sought under Labor Code section 3861. The majority reasons that determinations by the Board of the issues required by application of comparative principles of negligence  the amount of the injured employee's total damages, whether the employer was negligent, whether the third party was negligent, and the percentage of the employer's negligence  are purely ancillary in character and do not require the Board to condition benefits to the employee upon the fault of any party. The majority thus concludes that the constitutional mandate (Cal. Const., art. XIV, § 4) against making compensation to workers depend on the fault of any party is not violated.
I disagree with this conclusion. The majority's holding does not simply require the Board to determine issues of comparative negligence as purely ancillary or peripheral matters to adjust liability between the employer and third party without making the injured employee's compensation dependent on the relative fault of the employer and the third party. We are dealing in the case at bench with the question of whether a negligent employer is entitled to a credit against his liability for a permanent disability award, sought by an employee, in the amount of the proceeds of a settlement obtained by the injured employee from a third party.
In order for the Board to determine the partial credit to be allowed the employer, the Board must adjudicate the following issues under the majority's holding, and determine (1) the total damages of the employee, *858 including damage items solely recoverable as compensation from the employer and also other damage items recoverable from a third party such as pain and suffering; (2) whether the third party was negligent; (3) whether the employer was negligent; (4) whether the injured employee was negligent, and (5) the relative degree of fault of the employer out of the 100 percent fault made up of the employer's, employee's and the third party's negligence. In the event the employee has made a settlement with two or more third parties, with one being sued on a negligence theory and another on strict liability in tort, the determination of comparative fault of the employer is further complicated.
Under Roe, an employer's negligence precludes the allowance of any credit and the employee receives his full permanent disability award. Under the majority's holding the allowance of a partial credit may well reduce the amount the employee will receive in permanent disability benefits from the employer. In such a case, the amount of the employee's compensation benefits has unquestionably been affected by the "fault" of the employer. The employee has not been compensated, therefore, "irrespective of the fault of any party" as required by the constitutional mandate. Thus, in the case at bench, the Board determined that the injured employee, Jeffery L. Cole, was entitled to a permanent disability award of $8,085, less $2,270 advanced by the employer, leaving a balance of $5,815 due from the employer. Under the Roe doctrine, the employer was held to be negligent and thus not entitled to credit against this liability of $5,815 in any amount of the net $40,000 settlement proceeds received by employee Cole.
But under the majority's holding, the Board would be required to determine Cole's total damages, made up of an allowance for pain and suffering, the reasonable value of medical and hospital care, the reasonable value of time lost from work, the present cash value of earning capacity certain to be lost in the future, and to determine what portion of those total damages would constitute a permanent disability award Cole would be entitled to obtain from his employer. The total damages determined might be far in excess of the $60,000 gross settlement Cole obtained from the third party or far less than that sum. Certainly, the settlement figure may have no reasonable relationship to Cole's total damages. The Board would then be required to determine the comparative negligence of Cole's employer and the third party in order to arrive at the partial credit to which the employer would be entitled. After all of these determinations, Cole's award of $5,815, or some other amount for permanent disability benefits due from the employer, could very well end *859 up being wiped out completely or diminished because of the partial credit to be allowed to the employer.
In any case in which an employee's award of full permanent disability benefits is diminished because of a partial credit allowed to a negligent employer who is permitted to take advantage of the principle of comparative fault, the conclusion is compelling and inescapable that the employee's benefits have been based in part upon the "fault" of his employer in violation of article XIV, section 4, of the California Constitution.
It is to be noted that, although an employee's negligence can have no direct bearing upon the amounts he is to recover from the employer in temporary and permanent disability benefits, in a case in which the employee is negligent, the Board would, nevertheless, have to determine the percentage of such negligence in order to determine 100 percent of negligence of all parties and the relative percentage of negligence of the employer and third party for purposes of calculating the partial credit to which the employer would be entitled under the majority's doctrine of comparative negligence.
The Board's responsibility will be further intensified and aggravated if we have an injured employee's settlement recovery obtained from a third party alleged to be responsible for the injury on the basis of a defective product manufactured by the third party. A further complication will be encountered if the injured employee obtains a separate settlement recovery from two third parties  one being sued on a negligence theory and the other on a strict-liability-in-tort theory for a defectively manufactured product. In the event of these possibilities, I assume that the majority would apply the holding of Safeway Stores, Inc. v. Nest-Kart (1978) 21 Cal.3d 322 [146 Cal. Rptr. 550, 579 P.2d 441], and require the Board to apply comparative fault principles between the negligent employer and the strictly liable third party tortfeasor.
It is manifestly apparent that any decrease in the award of permanent disability benefits to the injured employee by operation of the majority's modification of Roe to compel application of comparative-fault determinations cannot be justified on any theory that it is necessary to prevent double recovery by the employee. The Roe court recognized that denying any credit to a negligent employee did not have this result. The grant of a partial credit, therefore, provides even less justification for any theory of necessity to prevent double discovery by the injured employee.

*860 III

The Application of Comparative Negligence Principles to a Proceeding Before the Workers' Compensation Appeals Board in Which an Employer Claims a Credit Against His Liability for Compensation in the Amount of an Injured Employee's Settlement Recovery From a Third Party Prevents the Proceeding From Accomplishing Substantial Justice Expeditiously and Inexpensively and Without Incumbrance of Any Character in Violation of Article XIV, Section 4 of the California Constitution
In addition to making the injured employee's recovery of compensation benefits dependent, in part, upon the fault of the employer, the majority's modification of Roe constitutes an unwarranted violation of the provisions of article XIV, section 4, of the California Constitution. These provisions state, in pertinent part, that the administration of the system by the administrative body charged with the responsibility  the Workers' Compensation Appeals Board  "shall accomplish substantial justice in all cases expeditiously, inexpensively, and without incumbrance of any character" (ibid; italics added); and that the foregoing, among other matters, "are expressly declared to be the social public policy of this State, binding upon all departments of the State government." (Ibid.)
The majority's holding requires the workers' compensation judges and the Board to function as a civil court administering difficult principles of tort law. Thus, the issues of total damages suffered by an employee, including an evaluation of the worth of pain and suffering, of the conduct of the third party  whether it constituted negligent conduct or that of a manufacturer of a defective product, of the conduct of the employer  whether it was negligent conduct or not, of the conduct of the employee  whether negligent or not, of the comparative fault or negligence of each of these parties to constitute 100 percent of fault for the employee's injury, are all issues dealt with in the civil courts but not involved at all in normal proceedings of the workers' compensation system.
The determination of these issues generally requires extensive examination and cross-examination of a number of witnesses, both lay and expert, including expert witnesses such as engineers and accident reconstruction experts. If the determination of comparative fault involves *861 a negligent employer and a third party whose liability is predicated on the manufacture of a defective product, the percentage of fault assessed against each of these parties can only be based upon pure speculation, conjecture and guess work by the trier of fact.
It is utterly unrealistic and impractical thinking to expect the workers' compensation judges and the Workers' Compensation Appeals Board to handle these new issues either expeditiously, inexpensively or without incumbrance as required by the California Constitution. On the contrary, I consider it abundantly clear that these issues, required to be handled by the workers' compensation judges and the Board as a result of the majority's modification of Roe, can only be handled nonexpeditiously and expensively  contrary to the requirements of article XIV, section 4, of the California Constitution. Nor can the Board be expected to accomplish "substantial justice in all cases" as required by the provisions of article XIV, section 4, of the California Constitution.
I am convinced that substantial injustice in many cases will necessarily result to the injured employee from the majority's modification of the Roe doctrine of no credit allowance to a negligent employer. As Justice Clark remarked in his concurring opinion in Safeway Stores: "Blind inquiry into relative fault is no better than the flip of a coin, and disputes over degree of fault must greatly increase the time and cost of litigation.[¶] While the comparative fault doctrine continues irresistible in the abstract, implementing the new doctrine requires both great administrative expense and analytical and mathematical determination for which the judicial system is not equipped." (Safeway Stores, supra, 21 Cal.3d 322, 335.) (Italics added.) These consequences stated by Justice Clark apply with even greater certainty and inevitability to the injection of comparative principles of fault into the administrative system of workers' compensation.
The principles underlying the workers' compensation system and those underlying the tort negligence or fault system are so completely different and dissimilar from both a qualitative and a quantitative standpoint that any attempt, such as that made by the majority in the case at bench, to fuse the two into an integrated whole can only do violence, inequity and injustice to the special considerations of the workers' compensation system. As between employee and employer in proceedings before the Board, questions involving issues of comparative negligence or fault and issues of the extent and monetary value of pain and emotional trauma *862 suffered by the injured employee are obviously repugnant and antithetical to the undergirding principles of workers' compensation law.
The central theme of the workers' compensation law is that the worker who is injured during the course of his employment shall receive all medical care needed as a result of his injury and a modest but not a full recompense for his lost earnings and his loss of earning capacity. These benefits are the only benefits made available to the employee from his employer because of the premise that they are recoverable regardless of the fact that the employee's negligence might even be the sole proximate cause of his injury. These benefits constitute the maximum liability of the employer irrespective of the proximate cause or causes of the injury and irrespective of the amount of pain and emotional trauma suffered by the employee as a result of his injury. The workers' compensation judges and the Board are trained and geared to conduct hearings and make the necessary determinations in the disputes between an employee and his employer regarding these very limited issues.
In the case before us, however, the majority is willing to risk, in the absence of any compelling necessity therefor, undermining the carefully developed principles and policies that support the constitutional and legislative enactments creating the workers' compensation system. The majority is willing to take this risk in the pursuit of an illusory, theoretical, and impractical goal of assuring that, when a third party and an employer are both responsible for an employee's injury and damages, neither the employer nor the third party should ever end up being responsible for a greater portion of the employee's damages than is established by the respective percentages of fault. This view of the majority represents an unexplainable solicitude for the interests of the employer and third party rather than a solicitude for the injured employee.
It is of significance that, in the case at bench, we are not really talking about the rights and obligations between an employer and third party directly. On the contrary, we are deciding the rights and obligations between an employer's insurance carrier and a third party's insurance carrier. Each insurance company has been paid premiums for undertaking the risks involved. It is neither the employer nor the third party who suffers by virtue of any shifting between the insurance carriers of the responsibility for specified percentages of the damages suffered by the injured employee. Most employers are business entities. The cost of insurance premiums is a cost of doing business which is passed on to the *863 customers of the business. Most third party tortfeasors are also business entities in which the cost of insurance premiums represent part of the cost of doing business that is paid for by the customers of these entities. Thus, the amount of damages to the injured employee that is paid by the insurance carriers for the employee and the third party is in reality financed by the customers of the employer and the third party. The costs of the awards to injured workers are spread, therefore, among a substantial segment of society.
The principle here involved is similar to that expressed by this court in Greenman v. Yuba Power Products, Inc. (1963) 59 Cal.2d 57, 63 [27 Cal. Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049], in imposing upon a manufacturer liability without negligence for injuries resulting from a defective product: "The purpose of such liability is to insure that the costs of injuries resulting from defective products are borne by the manufacturers that put such products on the market rather than by the injured persons who are powerless to protect themselves." The fact that Daly v. General Motors Corp. (1978) 20 Cal.3d 725 [144 Cal. Rptr. 380, 575 P.2d 1162]; American Motorcycle Assn. v. Superior Court (1978) 20 Cal.3d 578 [146 Cal. Rptr. 182, 578 P.2d 899], and Safeway Stores, Inc. v. Nest-Kart (1978) 21 Cal.3d 322 [146 Cal. Rptr. 550, 579 P.2d 441], have been deemed by a majority of this court as a logical extension of the Li principles of comparative negligence does not at all lead reasonably to the conclusion that the case before us also represents such a logical extension.
As I have explained above, the laudable but impractical and illusory goal of the majority to require the sharing of liability between employers and third parties according to the principle of comparative degrees of fault will, in the instant case, result in injustice, increased costs of administration and litigation, and in the nonexpeditious and expensive disposition of cases before the Workers' Compensation Appeals Board  undesirable results which are constitutionally interdicted and which clearly outweigh any possible beneficial effects sought by the majority.
In Roe, this court expressed the principle that "[t]he injured workman is the prime object of constitutional solicitude" (Roe, supra, 12 Cal.3d 884, 891), in criticizing the concept expressed in a literal adherence to Labor Code section 3861 which would grant a negligent employer an automatic credit for the full damage recovery secured by an employee against a third party. To carry out this principle of constitutional solicitude for the injured workman, the Roe court precluded a negligent employer from obtaining against his liability for future permanent *864 disability benefits to the injured employee, any credit in the amount recovered by the employee against a third party. But, in modifying Roe to grant a negligent employer a partial credit in the employee's third party recovery, the majority in the case at bench has unfortunately forsaken and repudiated this principle, so nobly expressed in Roe.
I would deny the petition for writ of review and affirm the award.
Bird, C.J., and Tobriner, J., concurred.
NOTES
[1] Except where noted, all statutory references are to the Labor Code.
[2] The Workers' Compensation Appeals Board will hereafter be referred to as the board.
[3] This constitutional argument was based on provisions in article XIV, section 4, requiring compensation "irrespective of the fault of any party," and contemplating such legislation as "shall accomplish substantial justice in all cases expeditiously, inexpensively, and without incumbrance of any character...." (See discussion infra.)
[4] In keeping with the statutory usage (§ 3850, subd. (b)), all references to "employer" hereafter include employer's workers compensation carrier, unless otherwise indicated.
[5] Prior to its amendment in 1971, section 3859 provided: "No release or settlement of any claim under this chapter as to either the employee or the employer is valid without the written consent of both. The consent of both the employer and employee filed in court in writing together with the approval of the court, is sufficient in any action or proceeding where such approval is required by law."
[6] Subdivision (b) of section 3860 now reads in full: "(b) Except as provided in Section 3859, the entire amount of such settlement, with or without suit, is subject to the employer's full claim for reimbursement for compensation he has paid or become obligated to pay and any special damages to which he may be entitled under Section 3852, together with expenses and attorney fees, if any, subject to the limitations in this section set forth."
[7] The survival of both a credit and reimbursement remedy under the holding of this case gives the employer the choice of two courses of action, one against the third party and one which penalizes the employee. Most employers can be expected to choose the forum presenting the least onerous proof requirements. The risk that an employer will seek recovery from the third party may be effectively allocated by an agreement under which the employee agrees to assume the defense of such an action and pay any resulting judgment. This type of agreement has been successfully consummated. (See Levels v. Growers Ammonia Supply Co. (1975) 48 Cal. App.3d 443 [121 Cal. Rptr. 779].) Similar arrangements might shift the risk of a successful credit claim to the third party.
[8] The Los Angeles Superior Court has proposed jury instructions for reimbursement cases which substantially embody employer's proposed system. (BAJI Nos. 15.14-15.19 (6th ed. 1977) pp. 668-691.)
[9] Under the rule of American Motorcycle, the joint and several liability of joint tortfeasors is retained. (20 Cal.3d at pp. 586-591.) Thus, except for his Witt-type deduction, the third party remains liable for all of employee's damages, including the portion which represents the extent to which section 3864 insulates the negligent employer from the comparative responsibility he would otherwise incur.

As no allegations of employee negligence appear on the face of this record, we do not decide here how such negligence, if established, would affect the proportional contribution of the employer.
[10] Application of this rule is simple and may be illustrated by the following example. Assume an employee receives $20,000 in workers' compensation benefits. He later sues a third party to recover for the same injury, which suit is settled without the consent of the employer. Out of the settlement, the employee actually receives, after the payment of "expenses or attorneys' fees" within the meaning of section 3861, the sum of $25,000. The employee then seeks further benefits from the board, and his employer claims a credit in the amount of the $25,000 settlement recovery. Under the principles announced herein, the board would then determine the employer's degree of fault and the employee's total damages. Should the board find the employer free of negligence, of course, the employer would receive the benefit of the entire $25,000 settlement as a credit against future payments. Were the board, however, to determine that the employer was 50 percent negligent, and that the employee is entitled to $100,000 in damages, then the employer could not claim a credit until he contributed an additional $30,000 in benefits. The employer would then have contributed a total of $50,000 to the employee's recovery, or 50 percent of the employee's total damages of $100,000, and the ratio of his contribution to the employee's damages would correspond to his degree of fault.
[11] Thus, under its proposed rule the employer herein would be relieved of all further contribution even if it is determined that employer was 85 percent at fault: credit for only 15 percent of the employee's $40,000 net settlement would effectively wipe out employer's further workers' compensation liability of approximately $5,800.
[12] BAJI Nos. 15.14-15.19 (6th ed. 1977) pages 668-691, to the extent they are inconsistent with this opinion, should not be used by trial courts.
[*] Assigned by the Chairperson of the Judicial Council.