Uallen **CARRIERE**, Plaintiff,

v.

**COMINCO ALASKA, INC.,** Defendant.

No. A91–373 Civil.

United States District Court,
D. Alaska.

March 23, 1993.

Eric T. Sanders, Young Sanders & Feldman, Anchorage, AK, for plaintiff.

Charles M. Merriner, Pletcher Weinig Moser & Merriner, Anchorage, AK, for defendant.

## ORDER

### (Application of AS 09.17.080)

HOLLAND, Chief Judge.

The plaintiff, Uallen Carriere (hereinafter "Carriere"), a Louisiana resident, was injured when he was struck by a beam that fell from a crane. The accident occurred on August 27, 1989, while Carriere was working at the Red Dog Mine project near Kotzebue, Alaska. The engine that powered the crane failed when it ingested some contaminated fuel. The engine failure caused the beam to fall and strike Carriere. Carriere brought suit, alleging causes of action in both negligence and strict products liability, against Cominco Alaska, Incorporated (hereinafter "Cominco"), an Alaska corporation which supplied the fuel.

Cominco has moved the court for a ruling on the law of the case as to allocation of fault between concurrent tortfeasors or in the alternative for leave to file a third-party complaint (Clerk's Docket No. 35). The motion is opposed. The court has heard oral argument.

Cominco asserts that it was not alone in the fuel distribution process and that the additional participants are potentially concurrent tortfeasors. Included amongst these participants are the original supplier of the fuel, the distributor of the fuel, the quality control monitor, the owner of the construction project, and Carriere's employer. Cominco asks this court to permit the jury to

allocate fault to all concurrent tortfeasors without requiring Cominco to file a third-party complaint naming all tortfeasors as defendants. Alternatively, Cominco requests leave to file a third-party complaint against all entities or individuals that are potentially concurrent tortfeasors. Carriere asserts that if Cominco wants to assert fault to another actor, Cominco must make that actor a party and that, under the time provisions allotted by this court, Cominco's time for filing third-party complaints has passed.

## A. Choice of Law

■ Federal court jurisdiction in this case is based on diversity of citizenship, 28 U.S.C. § 1332. In such a case, a federal court applies the choice of law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *Alaska Air v. United Airlines*, 902 F.2d 1400, 1402 (9th Cir.1990).

■ In tort cases, Alaska courts have followed the Restatement (Second) of Conflicts of Law in determining the applicable substantive law. *Ehredt v. DeHavilland Aircraft Co. of Canada, Ltd.*, 705 P.2d 446, 453 (1985). Under the Restatement, the local law of the state where the injury occurred determines the rights and liabilities of the parties in a personal injury action, unless some other state has a more significant relationship to the occurrence and the parties. *Restatement (Second) of Conflict of Laws* § 146 (1971). To determine if another state has a more significant relationship to the occurrence and the parties, the following contacts are to be considered:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicil[e], residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

*Id.* § 145.[1]

■ Alaska law will govern the present dispute, because the plaintiff was injured in Alaska and Alaska has the most significant relationship to the accident and the parties. While it is true that Carriere is a resident of Louisiana, the entire conduct leading to the crane's malfunction occurred in Alaska. In addition, Cominco is incorporated in Alaska, and the relationship between Carriere and Cominco, as well as the other potential concurrent tortfeasors, was centered around the construction project involving the Red Dog Mine near Kotzebue, Alaska.

## B. Analysis of Alaska Law

The thorny question presented by the motion now before the court is the method for allocating fault among concurrent tortfeasors who produced a single, indivisible injury, where the plaintiff has singled out only one tortfeasor as a defendant. Alaska law governing concurrent tortfeasors is found in AS 09.17.080. This statute provides in full:

*Sec. 09.017.080. Apportionment of damages.*

(a) In all actions involving fault of more than one party to the action, including third-party defendants and persons who have been released under AS 09.16.040, the court, unless otherwise agreed by all parties, shall instruct the jury to answer special interrogatories or, if there is no jury, shall make findings, indicating

(1) the amount of damages each claimant would be entitled to recover if contributory fault is disregarded; and

(2) the percentage of the total fault of all of the parties to each claim that is

---

1. The following principles are relevant in evaluating the significance of the relationship:

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic law policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

*Id.* § 6.

allocated to each claimant, defendant, third-party defendant, and person who has been released from liability under AS 09.-16.040.

(b) In determining the percentages of fault, the trier of fact shall consider both the nature of the conduct of each party at fault, and the extent of the causal relation between the conduct and the damages claimed. The trier of fact may determine that two or more persons are to be treated as a single party if their conduct was a cause of the damages claimed and the separate act or omission of each person cannot be distinguished.

(c) The court shall determine the award of damages to each claimant in accordance with the findings, subject to a reduction under AS 09.16.040, and enter judgment against each party liable. The court also shall determine and state in the judgment each party's equitable share of the obligation to each claimant in accordance with the respective percentages of fault.

(d) The court shall enter judgment against each party liable on the basis of several liability in accordance with that party's percentage of fault.

*Id.*

AS 09.17.080 contains no procedure whereby one tortfeasor who is singled out in a complaint may allocate fault to unnamed tortfeasors. At any rate, this is how the problem has been characterized heretofore by the Superior Court for the State of Alaska in *Dunaway v. The Alaska Village, Inc.,* 3AN–90–3526 Civil, Decision of July 25, 1991,

at 6, and by this court in *Robinson v. U–Haul Co.,* 785 F.Supp. 1378, 1383 (D.Alaska 1992). In the latter case, this court followed *Dunaway*—in substance constructing a cause of action for "equitable or implied indemnity", *Dunaway* at 7, or "equitable allocation", *Robinson* at 1380 n. 4, in favor of a joint tortfeasor who has been sued and desires to join other parties to the litigation for purposes of determining the tortfeasor's fault under AS 09.17.080.[2]

When confronted with the same issue and problem, the Alaska Superior Court at Sitka in *Owens v. Robbins,* 1SI–90–0354 Civil, Order dated September 27, 1991, took a different approach. Construing AS 09.17.080 the *Owens* court concluded that:

> [S]ince contribution [among joint tortfeasors][3] no longer exists and since the Supreme Court has rejected equitable indemnity, the defendants can not bring in persons who share in the responsibility for the injury. To avoid this result and to attempt to meet the clear directive of the initiative [AS 09.17.080(d) as quoted above],[4] the court concludes that fault may be allocated among non-parties.

*Id.* at 2–3 (footnotes not in original).

Implicit in the foregoing decision is the fact that the construction of AS 09.17.080 has not yet reached the Alaska Supreme Court. Confronted as we are with conflicting Alaska trial court decisions, it would be very easy for this judge to defer to his colleague who has already given thoughtful attention to whether this court should follow the *Duna-*

**2.** In *Nagasiak v. Berkshire and Assoc., Inc.,* No. 4BE–91–107 Civil, another state trial court dealt with the same issue and treated AS 09.17.080 as being an "unambiguous statute", the literal terms of which were to be applied. *Nagasiak,* No. 4BE–91–107 Civil, Order dated April 20, 1992, at 4.

**3.** State of Alaska Initiative No. 87–2, effective March 5, 1989, repealed AS 09.16, which chapter had theretofore made provision for contribution among joint tortfeasors. 1980 Alaska Sess. Laws, ch. 80, § 1, *repealed by* 1987 Initiative Proposal No. 2, § 2.

**4.** Title 9, chapter 17, section 080 of the Alaska Statutes was also adopted by 1987 Initiative No. 2. Prior to adoption of the Initiative, subsection

(d) (1986) had provided that for actions involving fault of more than one party:

> The court shall enter judgment against each party liable on the basis of joint and several liability, except that a party who is allocated less than 50 percent of the total fault allocated to all the parties may not be jointly liable for more than twice the percentage of fault allocated to that party.

The 1986 version of subsection (d) perpetuated to some degree joint and several liability amongst tortfeasors; however persons who were responsible for less than 50 percent of a given casualty could only be held liable for twice their percentage share of the casualty. In other words, a party who was 10 percent responsible for a loss could only be held liable for 20 percent of the plaintiff's recovery.

*way* or *Owens* decisions. The court finds a number of the practical arguments for following *Dunaway* unpersuasive. The characterization of AS 09.17.080 as unambiguous and clear remind this court of the child's fable about the emperor's new clothes. In addition, the use of Rule 14, Alaska Rules of Civil Procedure and Federal Rules of Civil Procedure, as the vehicle for bringing in joint tortfeasors not named by a plaintiff is in the court's view inconsistent with the express language of that rule. The court will discuss the prior decisions on the question before it in due course. Before doing so, however, it is necessary and will be useful to re-examine the history of AS 09.17.080.

Prior to 1986, tort law in the State of Alaska followed a relatively standard pattern for the time. In *Kaatz v. State*, 540 P.2d 1037 (Alaska 1975), appeal after remand 572 P.2d 775 (Alaska 1977), the Alaska Supreme Court adopted a comparative negligence rule in favor of the traditional rule that any contributory negligence barred plaintiff from recovery. *Id.* at 1049. By virtue of AS 09.16, the Alaska Legislature made statutory provision for contribution among joint tortfeasors, thus easing the harshness of the State's joint and several liability law.

In 1986 the Alaska Legislature adopted a series of reforms in the area of tort law, most of which were codified as AS 09.17. For example, AS 09.17.010 limited non-economic losses in negligence actions to certain types of recoveries and placed a $500,000 cap on nonpecuniary loss. AS 09.17.080, as already suggested, placed limits upon the exposure of joint tortfeasors who were less than fifty percent responsible for a particular loss.[5]

Not satisfied with the Alaska Legislature's tort reforms,[6] the Citizens' Coalition for Tort Reform sponsored an initiative for the purpose of further amending AS 09.17.080(d) so as to do away entirely with any joint liability for tort and to simultaneously repeal the provisions for contribution between joint tortfeasors contained in AS 09.16.010–.060. The requisite number of signatures having been obtained, the initiative appeared on the ballot as Ballot Measure No. 2. The election results in favor of the adoption of Initiative 87–2 were certified December 5, 1988, and became effective March 5, 1989. A copy of Ballot Measure No. 2, the supporting and opposing statements, as well as a copy of the initiative itself as reprinted in the 1989 advanced legislative service to Alaska Statutes are appended to this order.

Several of the courts which have approached the construction of AS 09.17.080 with respect to unnamed concurrent tortfeasors have done so from a perspective of solving a procedural problem without identifying the real source of that problem. Section 080(a)(2) tantalizes us by specifically referring to some non-parties as "persons who have been released under AS 09.16.040", but section 080 makes no mention of other joint tortfeasors who are not parties to the action. It is the latter omission which is the source or cause of these procedural problems.

The court has already suggested that AS 09.17.080 was carelessly conceived and enacted. *See supra* note 5. The omission of any mention of non-parties who have not settled and been released under AS 09.16.040 is a statutory gap of substantial import. For example a plaintiff might choose to omit as a defendant an impecunious tortfeasor who was substantially at fault (over 50%) in the hope of litigating against only those with "deep pockets" but lesser fault. If section 080 means that fault is allocated only to parties and if the plaintiff can succeed in preventing

---

5. In an action which the court perceives as somewhat careless and indicative of a problem which will be discussed at some length hereinafter, AS 09.17.090 included as a supposed reform provision to effect the release of one or two or more persons liable in tort for the same injury. Section .090 repeated word for word AS 09.16.-040 which had been the law of the State of Alaska since 1970.

Alaska Statute 09.17.090 was repealed by § 17 ch. 14 SLA 1987, and AS 09.17.080(a) and (c) were simultaneously amended to make reference to AS 09.16.040 on the subject of the effect of a release. §§ 15–16, ch. 14 SLA 1987.

6. The Alaska Legislature had contemplated a similar elimination of joint and several liability with its reform measures in 1986. The Senate bill (SB 377), as originally proposed, did away with all joint liability between joint tortfeasors. Senate Bill 377 was amended in the Senate to parallel the House bill which proposed modified joint and several liability.

the joinder of other potential tortfeasors (for example, joinder would defeat diversity jurisdiction or the statute of limitations had run), then those parties less at fault may nevertheless pay all of defendants' damages despite the modification of joint and several liability. *Dunaway* and *Robinson* seek to avoid this problem by joining potential unnamed tortfeasors as third-party defendants; but that would not always succeed in preventing the subversion of AS 09.17.080(d) (1989) as discussed below.

The point the court would make is that AS 09.17.080(a) is seriously flawed because of the omission of any provision with respect to un-released non-parties. Any reasonably skilled tort lawyer would have recognized the problem flowing from the absence of any mention of whether fault should or should not be allocated to un-released non-parties. One sentence stating the legislative choice of full or limited allocation of fault would have prevented this and all of the other litigation here discussed. The court's review of the legislative history of AS 09.17.080 (1989) indicates that this fault in section 080 was not perceived.

Although the precise issue raised here has not yet reached the Alaska Supreme Court, that court construed AS 09.17.080 (in *Lake v. Construction Machinery, Inc.*, 787 P.2d 1027 (Alaska 1990)), with respect to a very special kind of party (who will often be a non-party, joint tortfeasor in cases such as this): the plaintiff's employer.[7] Pertinent to this case, the Alaska Supreme Court set out the rules of construction which it found applicable to the construction of AS 09.17.080 in the following terms:

> The interpretation of a statute begins with an examination of the language used. Ordinarily, an unambiguous statute is enforced as written without judicial construction or modification; however, this rule is not controlling when a seemingly unambiguous statute must be considered in conjunction with another act. *Hafling v. Inlandboatmen's Union*, 585 P.2d 870, 872 (Alaska 1978). In that case, we will exam-

ine the legislative history and adopt a reasonable construction which realizes legislative intent, avoids conflict or inconsistency and gives effect to every provision of both acts. *Id.* at 873, 875, 877. Thus, we will presume that the legislature enacted AS 09.17.080 with the Workers' Compensation Act in mind.

> When we decided *Arctic Structures [v. Wedmore*, 605 P.2d 426 (Alaska 1979) ], we noted that the view espoused in *Associated Construction & Engineering Co. v. Workers' Compensation Appeals Board*, 22 Cal.3d 829, 150 Cal.Rptr. 888, 587 P.2d 684 (1978), had "considerable merit." 605 P.2d at 440. Respondents argue that the legislature recognized the merit of the California rule and incorporated it into the law of Alaska when it adopted AS 09.17.080.

> The legislature's intent is not apparent from the plain language of AS 09.17.-080(a)(2). Although the legislature has authorized the finder of fact to allocate fault among "each claimant, defendant, third-party defendant, and person who has been released from liability under AS 09.16.040," an employer does not fit easily within any of these categories.

*Lake*, at 1030 (footnote omitted).

The court understands the foregoing to stand for the proposition that AS 09.17.080 although perhaps "seemingly unambiguous" on its face is to be subjected to the more critical interpretive examination so as to give effect to legislative intent, and other interrelated laws. In *Lake*, the Alaska Supreme Court was called upon to harmonize the Alaska Workers' Compensation Act AS 23.30.005, *et seq.*, and AS 09.17.080 as regards the apportionment of damages. This court will have to address that problem as well; but initially this court must confront a similar but different interpretative problem, which was not the focus of *Lake*.

■ Alaska Statute 09.17.080 is not the result of a single legislative bill or act. As detailed above, section 080 as originally promulgated contained a modified joint and sev-

---

7. In *Lake* the employer was a party to the action because of an express, private indemnity agree- ment. *Id.* at 1028.

eral liability clause. Law of June 11, 1986, ch. 139, § 1, 1986 Alaska Sess.Laws § 09.17.-080(d), *amended by* Initiative Proposal No. 2, § 1 (1989). Effective in 1989, as a result of the voter initiative, subsection 080(d) was amended and AS 09.16, a 1970 act providing for contribution among joint tortfeasors, was repealed. The intervention of the initiative requires that the newly adopted subsection 080(d) be harmonized with the legislature's earlier provisions for the apportionment of damages. Additionally, the court concludes that the repeal of a statute is itself a legislative act. When a repeal and some other legislative enactment are interrelated the court must give these legislative acts a reasonable construction so as to effect legislative intent, avoid conflicts and inconsistencies and give effect to all provisions of remaining enactments as well as the act of repeal. Thus in this case the court must examine how the amended subsection 080(d) is to interrelate to the earlier adopted subsections of AS 09.-17.080 as well as give effect to the repeal of the provisions for contribution amongst joint tortfeasors.

The need for such examination is best put in focus with reference to exactly what the 1987 initiative did to the apportionment statute. As already stated the initiative substituted pure several liability in place of modified joint and several liability. The impact of this change is not inconsiderable in terms of the State's public policy as regards plaintiff's recoveries for tort injury and the allocation of fault with respect to the same. The 1986 version of subsection 080(d) was plainly a compromise as regards the rights of plaintiffs and defendants. Because any responsible party could be held accountable for double his percentage of fault, there was a substantial probability of full accountability for the total level of defendant's fault even if all of the joint tortfeasors were not named defendants. On the other hand a single defendant who was responsible for only a small percentage of plaintiff's harm was unlikely to

be required to pay the entire loss, since liability was limited to twice his fault.

The 1987 initiative had the potential for drastically changing that situation. On its face the initiative says that the liability of each party-joint tortfeasor shall be determined, "in accordance with that party's percentage of fault." AS 09.17.080(d) (1987). The initiative could mean that a party-joint tortfeasor who is 10 percent responsible for a particular injury may be held accountable for no more than 10 percent of the plaintiff's loss even if he is the only defendant. The initiative in conjunction with subsection 080(a) could also mean that a party-joint tortfeasor who is 10 percent responsible for a particular injury may be held accountable for 100 percent of the plaintiff's loss if he is the only "party" and there are no third-party defendants and persons who have been released under AS 09.10.040 and no plaintiff comparative negligence. A plaintiff's recovery can be very substantially impacted by the choice of interpretation.

The decisions to date have not faced the foregoing problem. It is in this context that the court alluded to its memory of a children's story about the emperor and his new clothes.[8] As the court will develop hereinafter, the court believes that the electorate, for good or ill, well informed or not, opted for a tort liability scheme based upon several liability with no right of contribution. The court believes that the electorate was called upon to and in fact did make a value judgment—a policy decision—that they as potential claimants would rather risk not recovering in full than assume the supposed certainty of higher insurance rates which are presumably associated with a tort liability scheme based upon joint and several liability. Why no one has confronted the problem in this fashion is a mystery to the court. In my view the electorate has to be told what it has done—and the sooner the better so that possible claimants can take steps to protect

8. As the court recalls it, some charlatans sold the emperor an invisible suit of clothes, no doubt at a hefty price. The emperor's courtiers, being unwilling to think much less say that they could

not see the new suit, allowed the emperor to parade around in his birthday suit. As the court recalls it, the punchline is that some little kid in

themselves with additional insurance.[9]

The court construes AS 09.17.080(d) (1989), that is the initiative provision, as having expressly and unambiguously terminated all provision for contribution between joint tortfeasors. The court perceives no room for debate on that subject. The terminology for the initiative insofar as it abolished joint tort liability in favor of pure several liability is not so unambiguous. Especially when read in the context of the entire section of which it became a part, the initiative subsection 080(d) is ambiguous in its use of the word "party".

In the context of AS 09.17.080, especially subsection (a), the word party is employed in a fashion such that it arguably means a plaintiff or defendant in a lawsuit—that is a litigant. An equally common, accepted meaning of the word party is: one (as a person or group) constituting alone or with others one of the two sides in a proceeding. *Webster's Third New World Dictionary* 1648 (1981). By way of example of the latter definition the dictionary speaks of parties to an agreement. The court looks to the official supporting and opposing statements which accompanied Ballot Measure No. 87–2 for guidance on the subject of whether or not those considering the initiative would have understood the term party to have reference to a litigant or to some broader meaning of that word. The statement in support of the initiative (and recall please that the initiative passed) does not employ the term "party" as does the initiative proposition itself. The supporting statement starts out as follows:

> Supporters of this ballot measure believe it isn't fair to hold *people* responsible for things that aren't their fault.

Statement in Support of Ballot Measure No. 2 (emphasis added). The statement continues with a description under then present law and in that context does refer to a litigant, employing the word defendants. Throughout the supporting statement, however, it is very clear that the thrust of the proposition is that people in general, as distinguished from just those people who get sued, should pay for a wrong to the extent of a "person's degree of fault". The supporting statement contains nary a hint of the notion that fault should be apportioned amongst only those who the injured party decides to sue or who may be drawn into the litigation by other defendants. Again, the thrust of the supporting statement is that fault be allocated to anybody having responsibility and that each should pay only his personal share of that fault.

The statement in opposition to the initiative proposition similarly employs the term "person" rather than "party". The opposition statement also very clearly implies that under the initiative plaintiffs will not be able to recover in full if some of the persons involved in the incident are uninsured or otherwise impecunious. Here again the discussion is not in any fashion suggestive of the possibility that fault would be allocated only amongst those named as defendants or otherwise brought into litigation by another party.

█ From the foregoing, the court concludes that the initiative was intended to create a pure several liability obligation as to each individual tortfeasor. The initiative was not intended to restrict the allocation of fault to those who were or could be brought into the litigation. Fault is, therefore, to be allocated amongst all whom the evidence in the case demonstrates to have had some percentage of fault irrespective of their party status.

As mentioned hereinabove, it is necessary as a part of the construction of the initiative to construe it and the remainder of AS 09.-17.080 so as to effect the repeal of the statutory provisions for contribution amongst joint tortfeasors. A primary difficulty which this court has with the approach taken by the courts in *Dunaway* and *Robinson* is that these cases seem to ignore the repeal of the statutory provisions for contribution amongst joint tortfeasors.

---

substance says, "Look Mommy, the emperor has no clothes."

**9.** For example, available uninsured motorist coverage also covers losses caused by unknown motorists who have collided with a plaintiff. AS 28.20.445(f) (1990)

*Dunaway* constructs a cause of action for equitable or implied indemnity. *Robinson* calls the action one for equitable allocation. In either case, the end result is that a joint tortfeasor gets sued when, as a matter of law, he or she owes the defendant nothing. These third-party defendant joint tortfeasors will presumably be required to defend the original defendant's contention that they were partially at fault for the plaintiff's injuries. Quite apart from a related procedural problem with that approach, it is plainly inconsistent with the repeal of AS 09.16.

In *Dunaway* the court labored to find an equitable or implied indemnity right in a fashion which in substance stands the repeal of the contribution statute on its head. The Alaska Supreme Court had previously held in *Vertecs v. Reichold Chemical*, 661 P.2d 619 (Alaska 1983), that there was no such cause of action as equitable or implied indemnity. The Alaska Supreme Court had reached that conclusion on the basis of, among other things, the existence of statutory provisions for contribution.[10] The *Dunaway* court presumes that the Alaska Supreme Court would now look favorably upon equitable or implied indemnity because the statutory provisions for contribution have been repealed. This approach presumes that the Alaska Supreme Court would in substance veto the 1987 initiative. It supposes that the court can construct an implied cause of action for indemnity even though the voters had eliminated a tortfeasor's ability to hold another tortfeasor responsible through the repeal of the statutory provision for contribution. Prior to the 1987 initiative there was contribution with no right to implied indemnity. In 1987, voters

repealed contribution, leaving one tortfeasor unable to sue a concurrent tortfeasor. That is what the electorate intended. Creating a cause of action for implied indemnity runs counter to the electorate's intent. This court respectfully suggests that the Alaska Supreme Court could not and would not imply a cause of action which the voters have expressly repealed.

In *Robinson*, the court subtly distances itself from the foregoing suggesting that the right which the defendant/third-party plaintiff is exercising should be described as "equitable allocation". *Robinson*, at 1380 n. 4. The distinction between implied or equitable indemnity and equitable allocation strikes this court as being of little significance. The net result is still that a defendant/third-party plaintiff who has absolutely no right to shift any of his liability to a third-party defendant is drawing un-sued joint tortfeasors into the fray. The third-party defendant cannot be made to contribute anything to the original defendant; but the third-party defendants will certainly have to pay. Someone will have to defend them, or they will be defaulted. Undoubtedly those who are insured will tender the defense of the allocation suit to their insurance carrier. Query whether the insurance carrier will refuse to defend or file a declaratory action, thereby potentially spawning satellite litigation over whether it must defend even though its insured has no liability. This kind of litigation (both the third-party suits and possible declaratory actions) will adversely affect insurance rates. High insurance rates are what the 1987 initiative was intended to prevent.

---

**10.** The existence of a statutory contribution scheme was one of many negative arguments that dissuaded the court from adopting a cause of action for non-contractual implied indemnity between concurrently negligent tortfeasors. Other negative arguments that combined to make the cause of action "inefficient", *Id.* at 625, included the vagueness of standards for determining its application, discouragement of settlements among negligent tortfeasors, and that such a cause of action ran contrary to the modern tort goal that each tortfeasor should pay for damages attributable to its tortious acts. *Id.* at 624–25. On the positive side the court recognized that a cause of action in implied indemnity among concurrent tortfeasors promoted fairness at least where one tortfeasor, with only a small degree of

fault, bore the burden of an entire loss under Alaska's joint and several liability statute. *Id.* at 623–24. In addition, the cause of action for implied indemnity was in accord with the tort principle that those at fault should bear the consequences of their defalcations, and it might lead to efficient spreading of the loss throughout society. *Id.* at 624.

Although it is clear that the Alaska Supreme Court refused to recognize a cause of action in implied indemnity among concurrent tortfeasors in the presence of a statutory contribution scheme, it is equally clear that even without the statutory contribution scheme, the court viewed the creation of such a cause of action skeptically. *Id.* at 625.

At an even more practical level, such third-party defendants will have little or no incentive to defend. Why should they? They cannot be held liable. All that can come from the third-party action is an allocation of fault. Even the default case will not be simple. Who will decide and who may litigate the level of fault to be imposed upon a third-party defendant who fails to appear and defend? Plainly the original defendant would like to lay off all fault to a third-party defendant. Plaintiff is unlikely to agree.

Attorney fees, if third-party practice is allowed, presents another set of problems. The court in *Dunaway* and *Robinson* rejected use of Rule 19 joinder of defendants in part out of concern that plaintiffs might be exposed to paying fees to parties whose joinder the plaintiff resisted. Both courts seem to imply that if Rule 14, third-party practice is used the correct party will pay fees. Such is not so clearly the case. Who is the prevailing party [11] in a third-party action to apportion fault. If some fault is attributed to a third-party one might logically assume that the defendant third-party plaintiff has prevailed. The court in *Robinson* saw that prospect as a "benefit" possibly flowing from joinder. *Robinson* at 1381 n. 4. Yet in no case is there a "right of recovery" against a third-party. *Id.* Can one who has no right of recovery (contribution) from a third-party defendant still prevail and recover Rule 82(a)(2) attorney's fees? Must a defendant who owes a defendant third-party plaintiff no indemnity successfully contest whatever level of fault the former alleges so as to avoid attorneys fees? This in turn suggests yet another risk: collusion between a defendant who has been sued and a third-party defendant who cannot be held liable to plaintiff or defendant for the purpose of shifting fault from defendant so as to reduce his liability to plaintiff. Perhaps the empty chair problem discussed below is the lesser of two evils.

When all is said and done, it appears to this court that the approach of *Dunaway* and *Robinson* has opened a procedural pandora's box which is unnecessary if the 1987 initiative in conjunction with the balance of AS 09.17.080 are given a construction which reasonably effects the overall intent of the statute as amended by the 1987 initiative. That is to say if the word "party" is given a more expansive meaning than plaintiff, defendant and third-party defendant, then fault can be allocated amongst all joint tortfeasors not just those who are litigants and there is no need for the creation of a dubious cause of action against joint tortfeasors whom the plaintiff has not seen fit to join or has been unable to join.

The court concludes that the term "party" in AS 09.17.080 is ambiguous in light of the foregoing and that "party" in section 080 may fairly and reasonable be construed to mean more than a litigant. As discussed above, to do otherwise robs the initiative of its clear intent as far as the meaning of the word party.

So as not to rest the decision solely upon the force of the initiative, the court can and should read section 080 as originally enacted as a whole. When we do so, it is clear that the term "party" in subsection 080(a) cannot be read as that section would literally seem to require. In the first place, the term "one party to the action" is immediately followed in subsection 080(a) by the phrase "including third-party defendants and persons who have been released under AS 09.16.040". Almost invariably, a person who has been released will not be a party. Certainly a released joint tortfeasor need not be a party, and subsection (a) plainly requires that fault be allocated to such a non-party.

■ Secondly, use of general terms followed by the several examples calls into play the doctrine of *ejusdem generis*. *Ejusdem generis* provides that where general words follow specific words in a statutory enumeration, the general words are construed to comprise only objects similar in nature to those enumerated by the preceding specific words. Likewise, where specific words follow general words in a statutory enumeration, the doctrine is equally applicable, and restricts application of the general term to objects similar to the specific words. *Suther-*

---

11. In both state court and in diversity cases in this court Rule 82, Alaska Rules of Civil Proce-

dure, applies and provides for attorneys fees to prevailing parties as a routine proposition.

land Stat. Const. § 47.17 (5th Ed.1992); State of Alaska v. First Nat'l Bank of Anchorage, 660 P.2d 406, 413 (Alaska 1982).

That the specific terms are descriptive and restrict the application of the general term accomplishes the goal of giving full effect to all the words in the statute and not regarding some as superfluous. If the general words were given their full and natural meaning, they would encompass the specific words, making the latter superfluous. If, on the other hand, the series of specific words is given its full meaning, the general words would be partially redundant. To give effect to both the specific and the general words, therefore, requires treating the specific as defining the class and the general as extending the statute to everything within that class. Sutherland Stat. Const. § 47.17 (5th Ed.1992).

Here the general phrase "party to the action" is followed by the specific phrases "third-party defendants" and "persons who have been released under AS 09.16.040". To give effect to both the general and specific phrases, the specific are descriptive of the objects of the class described by the general, and necessarily restrict the application of the general phrase to objects similar to the specific phrase.

■ In *Lake* at 1030 the Alaska Supreme Court found that a statutorily immune employer did "not fit easily within any of [the] categories" suggested by AS 09.17.080(a). The same cannot be said of a joint tortfeasor who is not the employer of the plaintiff. Joint tortfeasors such as those potentially involved in this case could possibly have been defendants or could have been persons who were released by the plaintiff. The potential unnamed tortfeasors in this case do fit easily within the categories described by section 080(a). The court concludes that the term "party to an action" in section 080(a) should be construed to mean a litigant or other joint tortfeasor involved in the same accident since "party" in section 080(a) already includes one kind of non-party. This is in substance the conclusion reached in Owens v. Robbins, 1SI–90–354 Civil, Decision of September 27, 1991, which held:

The clear intent of the initiative [1987–2] was to repeal the Contribution Among Joint Tortfeasor's Act and to eliminate joint liability. To require the jury to allocate fault only among those parties to the suit would allow the plaintiff to effectively avoid an allocation of fault among all the wrongdoers. In addition, since contribution no longer exists and since the Supreme Court has rejected equitable indemnity, the defendants cannot bring in persons who share in the responsibility for the injury. To avoid this result and to attempt to meet the clear directive of the initiative, the court concludes that fault may be allocated among non-parties. To avoid injustice, the non-parties must be previously identified by name or activity as being responsible for part or all of the injury.

Owens v. Robbins, 1SI–90–354 Civil, Decision of September 27, 1991, at 2–3.

The court understands that there are some negative attributes to its construction of AS 09.17.080. For example there is the so-called "empty chair" problem. The court's approach to section 080 leaves the defendant with the opportunity to attempt to lay off responsibility for plaintiff's loss upon those not present—hence, the reference to the "empty chair". With the clear necessity of allocating fault to persons who have settled and been released, AS 09.17.080(a)(2), the problem is inherent in the allocation process any time one party has been released. If the court's assumption that many who are sued solely to allocate fault (the *Robinson* approach) will default because they can not be held for contribution is correct, more empty claims are likely even if joinder is attempted. Moreover many potential tortfeasors will have defenses available—such as the statute of limitations—which will lead to more empty claims.

On the other side of the ledger: allowing defendants to allocate fault to all joint tortfeasors without impleader will lead to fault—rather than plaintiff's fortuitous or unfortunate choices of who to sue, when to sue and where to sue—controlling who pays a plaintiff's loss. This is what the legislature and the voters intended in adopting AS 09.17.080 (1989).

For the sake of completeness, the court addresses the procedural problem which it perceives with the approach by the courts in *Dunaway* and *Robinson.* In both of these cases the respective state and federal courts employed their relatively similar Civil Rules 14 as the mechanism for bringing in available third-party defendants so as to expand the pool of "parties" as those courts interpret the term in AS 09.17.080(a).

Rule 14(a), Federal Rules of Civil Procedure, provides in pertinent part:

At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff.... The third-party defendant may assert against the plaintiff any defenses which the third-party plaintiff has to the plaintiff's claim. The third-party defendant may also assert any claim against the plaintiff arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff.

As originally formulated, Rule 14, allowed impleader not only of a person who might be liable to the defendant (e.g., for indemnity), but also of any person who might be liable to the plaintiff. A 1946 amendment to Federal Rule 14 deleted the latter portion of the rule.[12] The reason for and history of this amendment is found in Notes of Advisory Committee on Rules 1946 amendment.

Under Federal Rule 14 as originally formulated, the procedure suggested by the courts in *Dunaway* and *Robinson* would clearly have been possible.[13] Especially in light of the fact that Federal Rule 14 has been expressly amended to preclude the addition of a third-party defendant on the basis that he might be liable to the plaintiff, this court has great difficulty with the procedure suggested by *Dunaway* and *Robinson.*

In dealing with the Rule 14 aspect of this case, this court in *Robinson* expressly took note of the foregoing. *Robinson* at 1381. The court recognized that the third-party plaintiff would not be entitled to recover any damages in contribution from the third-party defendant and the action against the third-party defendant would serve only the purpose of apportionment of fault. The *Robinson* court observed at 1380–81 n. 4 that:

Despite the absence of any right of recovery to accompany the right of "equitable allocation," third-party practice is the appropriate vehicle for the action since the third-party plaintiff does stand to benefit from the joinder of other potentially liable actors.

The footnote continues to observe that there may be statute of limitations problems flowing from the third-party practice. *Id.*

With all due respect to my colleague, the undersigned is not persuaded that a benefit to the defendant/third-party plaintiff because of a broader spreading of fault under the procedures contemplated by *Dunaway* and *Robinson,* is the equivalent in any sense of the assertion of a claim by a third-party plaintiff against someone who "is or may be liable to [him] for all or part of the plaintiff's claim against the third-party plaintiff." Rule 14(a), Federal Rules of Civil Procedure. In fact as the court recognizes in *Robinson,* "the third-party plaintiff would not be entitled to recover any damages in contribution, since by operation of AS 09.17.080(d) judgment is entered against it only in proportion to its fault." *Id.* at 1381.

This court concludes that *Dunaway* takes inappropriate liberties with Alaska Civil Rule 14 and that *Robinson* does the same with Federal Civil Rule 14(a). The construction of AS 09.17.080 herein adopted totally avoids the problem of whether it is permissible to join as a third-party defendant a party who as a matter of law may not be held accountable to a third-party plaintiff even though the two are joint tortfeasors.

---

**12.** A 1966 amendment to Federal Rule 14, amended Federal Rule 14(c) to reinstate impleader on the basis of a third-party defendant's liability to the plaintiff for admiralty and maritime actions only.

**13.** Alaska Civil Rule 14(a) is substantively the same as Federal Civil Rule 14(a) as quoted above.

■ The motion now before the court suggests one final problem which flows from the possibility that some of the fault for plaintiff's injury may lie with his employer. The matter of whether or not any fault may be allocated to the plaintiff's employer in this case is definitively answered by the Alaska Supreme Court in *Lake v. Construction Machinery, Inc.,* 787 P.2d 1027 (Alaska 1990).

Consistent with the Alaska Supreme Court's vision of the Alaska workers' compensation scheme, no partial allocation of fault to the employer is permissible. A defendant may, however, establish through admissible evidence that he was either not negligent or was not a proximate cause of the plaintiff's injury. In endeavoring to do so "evidence of the employer's negligence may be relevant and admissible to prove that the employer was entirely at fault, or that the employer's fault was a superseding cause of the injury." *Lake* at 1031. Underscoring the foregoing, the Alaska Supreme Court continued:

> AS 09.17.080 presents a difficult factual choice: the finder of fact must allocate *all* or *none* of the total fault to the employer. It may not allocate only a portion of the total fault to the employer. Moreover, members of the bench and bar must take care in preparing jury instructions to prevent a panel from attributing to the employee any negligence of the employer.

The net result of the foregoing is that the trier of fact is entitled to attribute all fault to claimants and all tortfeasors except a plaintiff's employer. The tortfeasors singly or collectively are entitled to attempt to prove that the employer was totally at fault or a superseding cause for the plaintiff's injury; but they may not escape liability for their respective several shares of the fault if any of them were partially at fault.

The foregoing result is necessary because of the statutory obligation of the injured employee to fully reimburse his employer or its workers' compensation carrier for all benefits paid. AS 23.30.015(g) (1977). If the defendant joint tortfeasors establish the employer's total fault, then the injured employee has no recovery and owes no reimbursement to the employer or its insurance carrier. However where the employee makes some recovery, it is the policy of the State of Alaska that the employer be fully reimbursed irrespective of any role which he had in the accident; and, therefore, it would be inappropriate to reduce the plaintiff's recovery through any allocation of partial fault to the employer.

While this court is of the belief that the voters' adoption of the initiative 87–2 should cause some rethinking of whether or not Alaska's current policy of enforcing only several liability should take precedence over full repayment of employers who are partially at fault for injury, that is a policy decision as to which the Alaska Supreme Court has ruled. The ruling in *Lake* is beyond any question a rational approach to harmonizing the Alaska Workers' Compensation Act and AS 09.17.-080.

Defendant's alternative motion for leave to file a third-party complaint is denied. The motion for a ruling on the law of this case as regards allocation of fault is granted as hereinabove set out.

APPENDIX

Alaska State Library
Alaska Historical Collections
P. O. Box 110571
AK 99811-0571

COMPLIMENTS OF THE
ALASKA STATE LIBRARY

# BALLOT MEASURE NO. 2

## Initiative No. 87TOR2
## Civil Liability

### BALLOT LANGUAGE

(As it will appear on the November 8, 1988.
General Election Ballot)

This initiative changes the way damages can be collected from parties to lawsuits who share fault for injury to persons or property. The law now says that a party more than half responsible could be liable for the total judgement. Parties may collect from each other amounts paid over their share. Parties less than half responsible pay only up to twice their fault.

The initiative would make each party liable only for damages equal to his or her share of fault, and repeal the law concerning reimbursement from other parties.

Shall this initiative become law?

YES ☐

NO ☐

### LEGISLATIVE AFFAIRS AGENCY SUMMARY

This measure will affect lawsuits in which two or more persons are at fault.

The new law would tell the court to enter judgment against each person at fault, but only in an amount that represents that person's share of the fault.

Existing law now tells the court to enter judgment against each person at fault in an amount equal to the total liability of all persons at fault. Those at fault are required to share the total cost of the fault. The measure repeals that law.

The measure applies to suits based on acts occurring after its effective date.

### FULL TEXT OF PROPOSED AMENDMENT

What follows is the actual text of the amendment to Title 9 of the Alaska Statutes proposed by the initiative which would become law if the measure is passed by the voters. Capitalized words appearing in brackets are those in the current law which would be deleted. Words that are underlined would be added to the current law.

"Section 1. AS 09.17.080(d) is amended to read:

(d)The court shall enter judgment against each party liable on the basis of [JOINT AND] several liability [, EXCEPT THAT A PARTY WHO IS ALLOCATED LESS THAN 50 PERCENT OF THE TOTAL FAULT ALLOCATED TO ALL THE PARTIES MAY NOT BE JOINTLY LIABLE FOR MORE THAN TWICE THE PERCENTAGE OF FAULT ALLOCATED TO THAT PARTY] in accordance with that party's percentage of fault.

"Sec. 2. AS 09.16 is repealed

"Sec. 3. Underlined material in this Act indicates text that is being added to the law, and bracketed material in capital letters in this act indicates deletions from the law

"Sec. 4. Sections 1-2 of this Act apply to all causes of action accruing after the effective date of this Act.

"Sec. 5. If any provision of this Act, or the application thereof to any person or circumstances is held invalid, the remainder of this Act and the application to other persons or circumstances shall not be affected thereby.

22

694

Alaska State Library
Alaska Historical Collections
P O Box 110571
Juneau AK 99811-0571

# BALLOT MEASURE NO. 2

## STATEMENT IN SUPPORT

Supporters of this ballot measure believe it isn't fair to hold people responsible for things that aren't their fault. Yet, under current law, defendants found liable in a civil suit can be forced to pay damages equal to twice the amount of their fault. In other words, if you are 50 percent responsible for an injury you could be forced to pay 100 percent of the damages.

The current law – called joint and several liability – is simply unfair. It forces people to pay for damages caused by somebody else, and it contributes to inflated damage awards and encourages lawsuits based on who has money instead of who's at fault.

If Ballot Measure No. 2 is passed and you do something wrong, you pay for it. But you would not be forced to pay for something you didn't do – which could happen under present law.

This initiative will make the civil justice system more fair by assessing damages on the basis of a person's degree of fault, instead of on how much money or insurance he/she has. Thus, if you are found to be 20 percent responsible for someone's injury or property damage, you pay only 20 percent of the award.

Ballot Measure No. 2 will make the civil justice system more fair, while ensuring that people are held accountable for injuries or damage they cause.

Please vote YES on Ballot Measure No. 2.

Citizens' Coalition for Tort Reform
P.O. Box 201668
Anchorage, Alaska 99520

## STATEMENT IN OPPOSITION

In Alaska, when drunk drivers, criminals, careless corporations or polluters harm a person or his property, that person has the right to seek repayment for the wrong done to him. Ballot Measure No. 2 drastically limits this basic right to protect ourselves and our property from such wrongdoers.

Here is how it works. If two drunk drivers hit a car and cripple a little girl, the child can seek payment from both drivers. But if one driver has no money, who should pay the child's lifetime doctor bills – the other drunk driver, who is insured, or the child and her parents.

In 1986, our legislature dealt with this problem. It said the drunk driver with insurance and the young girl who was injured should share the problem created by the drunk driver without insurance.

Ballot Measure No. 2 eliminates that sharing, and places the entire burden on the innocent victim. In the example of the drunk drivers, the crippled child would recover only half her medical bills. The injured child and her parents would have to pay the rest. Under Ballot Measure No. 2, the drunk driver's insurance company will not have to pay all the child's medical bills. The insurance companies win, and we lose. That's unfair.

Even under current law, the innocent victim loses when one of the wrongdoers can't pay. For instance, suppose a corporate polluter is 10% at fault, and a penniless company is 90% at fault. Today, the corporate polluter shares the problem by paying only 20%. The innocent victims of the polluters, such as homeowners and fishermen, share the problem because they cannot recover 80% of their loss. That may be unfair to victims, but Ballot Measure No. 2 is even worse. Ballot Measure No. 2 would eliminate the sharing, and penalize only the victims.

The insurance companies pushing Ballot Measure No. 2 are telling us wrongdoers should only pay their own share of the loss. That sounds good. But the insurance companies are not telling us what happens when one of the wrongdoers cannot pay anything. This is a common problem. Under Ballot Measure No. 2, the insurance company wins, and the victim loses.

Who benefits from Ballot Measure No. 2? The answer is simple: insurance companies. Who loses under Ballot Measure No. 2? The citizens of the State of Alaska. Will we pay less for insurance if the law is changed? No. Not even one insurance company has promised to lower its rates if Ballot Measure No. 2 passes. And you can bet it won't happen. Do not be misled by the insurance companies' propaganda. Vote NO on Ballot Measure No. 2.

Alaskans For Fairness
P.O. Box 103363
Anchorage, Alaska 99510

23

1987 INIT. NO. 2

# STATE OF ALASKA
## INITIATIVE    NO. 87-2

1988

* Section 1.   AS 09.17.080(d)· is amended to read:

(d)   The court shall enter judgment against each party liable on the basis of [JOINT AND] several liability [, EXCEPT THAT A PARTY WHO IS ALLOCATED LESS THAN 50 PERCENT OF THE TOTAL FAULT ALLOCATED TO ALL THE PARTIES MAY NOT BE JOINTLY LIABLE FOR MORE THAN TWICF. THE PERCENTAGE OF FAULT ALLOCATED TO THAT PARTY] in accordance with that party's percentage of fault.

* Sec. 2.   AS 09.16 is repealed.

* Sec. 3.   Underlined material in this Act indicates text that is being added to the law, and bracketed material in capital letters in this Act indicates deletions from the law.

* Sec. 4.   Sections 1 - 2 of this Act apply to all causes of action accruing after the effective date of this Act.

* Sec. 5.   If any provision of this Act. or the application thereof to any person or circumstances is held invalid, the remainder of this Act and the application to other persons or circumstances shall not be affected thereby.